[Civil No. 1923.   Filed January 13, 1922.]

[203 Pac. 549.]

## GILA LAND & CATTLE COMPANY, a Corporation, Appellant, v. HENRY L. EADS, Appellee.

1. TAXATION—STATUTE HELD TO FORBID EXECUTION AFTER FIVE YEARS WITHOUT REVIVAL OF JUDGMENT — "PROCESS" — "PROCEEDING."— Under Laws of 1903, Act No. 92, section 87, requiring notice and processes in suits for taxes thereunder to be sued out and served in the same manner as in civil actions, and providing that the general laws of the territory as to practice and proceedings in civil cases should apply so far as applicable, and section 88, providing that execution should be executed as in other cases, Civil Code of 1901, paragraphs 2557, 2558, forbidding execution after the expiration of five years from the rendition of the judgment without revival of the judgment, applied to tax judgments, since "process" included an execution, in view of Civil Code of 1901, paragraph 2536, defining process as including writs, etc., while "proceedings" was used in its most comprehensive sense as including practically every step from the beginning of the action until the final process was executed, especially as section 97 of the Act of 1903 prohibited actions for taxes more than five years after the delinquency.

2. ADVERSE POSSESSION—STATUTORY REQUISITES MUST CONCUR.—Under Civil Code of 1913, paragraph 697, relative to adverse possession, peaceable and adverse possession for five years, cultivation, use, and enjoyment for five years, payment of taxes, if any, for five years all under a claim under deeds duly recorded for the full period of five years, must concur.

3. APPEAL AND ERROR—WHEN EVIDENCE SHARPLY CONFLICTING, TRIAL COURT'S CONCLUSION AS TO ADVERSE POSSESSION NOT DISTURBED.— Where the testimony was sharply in conflict as to plaintiff's adverse possession, cultivation, use, and enjoyment of premises for five years, the trial court's conclusion in favor of defendant will be adopted.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   R. C. Stanford, Judge. Affirmed.

2.  On unbroken continuity as essential element in adverse possession, see notes in 13 Am. Dec. 185; Ann. Cas. 1916A, 606; 15 L. R. A. (N. S.) 1202.

Mr. R. E. Sloan, Mr. C. R. Holton, and Mr. Greig Scott, for Appellant.

Messrs. Alexander, Christy & Baxter, for Appellee.

ROSS, C. J.—This is an action in the nature of ejectment. It was instituted by the Gila Land & Cattle Company, as plaintiff, to recover from Henry L. Eads, as defendant, the possession of the following described lands: N. E. ¼ and the N. ½ of the S. E. ¼ and the N. ½ of the N. W. ¼ and the S. W. ¼ of the N. W. ¼ of section 11, township 5 south, range 6 east, Gila and Salt river base and meridian, Maricopa county, Arizona. Both parties claim title in fee simple from a common source, to wit, one John Pedley. Plaintiff's chain of title consists of a tax deed dated March 4, 1914, to John Metz, and a quitclaim from Metz and wife to plaintiff, dated June 5, 1914.

Plaintiff also claims title under the five-year statute of limitations by reason of peaceable and adverse possession, cultivation, use and enjoyment and paying taxes thereon for that length of time under deeds duly recorded.

Defendant's chain of title is a deed from John Pedley and wife dated June 4, 1914, to Lura M. Southwick, and quitclaim from Lura M. Southwick to Henry L. Eads, dated January 10, 1920. Judgment was entered in favor of defendant, and plaintiff appeals.

One assignment of error is that the judgment is not justified by the evidence and is contrary to law. If the tax deed relied upon by plaintiff, as a link in his chain of title, is valid, the assignment is well taken. If it is not valid, and plaintiff is not the owner of premises by adverse possession, then the judgment must be affirmed. The tax deed recites the facts and circumstances leading up to its issuance, which are that John Pedley, the owner of premises, on January

5, 1906, suffered a judgment to be entered in favor of the territory of Arizona in the district court in and for Maricopa county, foreclosing a tax lien against said premises; that thereafter, on April 21, 1913, a special execution and order of sale was issued out of the superior court in and for Maricopa county, directed to the sheriff of said county, commanding him to sell said premises to satisfy judgment, interests, and costs; that the sheriff, by virtue of said special execution and order of sale, on the sixteenth day of May, 1913, at public auction, sold premises to John Metz, to whom he thereafter, on May 20, 1913, issued a certificate of sale, and the nine months period of redemption having elapsed without the judgment debtor or anyone for him redeeming, the sheriff, on March 4, 1914, issued to the purchaser, John Metz, his deed of said premises.

The defendant objected to the introduction of the tax deed by plaintiff, upon the ground that it appeared from its face that when execution and order of sale was issued the judgment against Pedley was dormant, being more than five years old. The court admitted the deed in evidence subject to the objection stating that he would rule on the question later on. Since judgment was for defendant, we take it the ruling was against plaintiff, for had it been otherwise judgment must have been for plaintiff. The Pedley judgment was over seven years old and had not been renewed when on April 21, 1913, the execution was issued and property sold. At the time that judgment was entered the general law as to when an execution could issue and as to the renewal of judgments was contained in paragraphs 2557 and 2558, Revised Statutes of 1901, as follows:

"2557. The party in whose favor a judgment is given may at any time within five years after entry

thereof have a writ of execution issued for its enforcement.

"2558. No execution shall be issued upon any judgment after the expiration of five years from the date of its rendition and entry, unless such judgment be revived by *scire facias,* or an action of debt be brought thereon within five years from the date of such rendition and entry."

If these provisions are applicable to a judgment in favor of the state for taxes, then the execution was issued in violation of the statutory prohibition contained in paragraph 2558, *supra,* and any sale thereunder would convey no title. It is the contention of plaintiff, however, that an execution may lawfully issue on a judgment in favor of the state after the lapse of five years without the necessity of renewing it; that the duty of renewing a judgment in its favor, or the limit of time in which an execution may issue without renewal as prescribed in the statute, is not of any binding effect as to the state, but is intended for persons only. This, we think, is the general rule. In *Villescas* v. *Arizona Copper Co.,* 20 Ariz. 268, 179 Pac. 963, we held an execution could issue and be levied and property sold thereunder more than five years after entry of judgment without a renewal thereof when the judgment was in favor of the United States on a forfeited bail bond, and if the judgment here were of that character the same rule would prevail. In *United States* v. *Noojin* (D. C.), 155 Fed. 377, it is said:

" '*Nullum tempus occurrit regi*' applies in the United States, both as to the federal government and as to the several states, except where express statutory provisions to the contrary exist."

January 5, 1906, the date of the Pedley judgment, the manner and method of collecting delinquent taxes were provided for by Act No. 92, page 162, Laws of

1903. This continued to be the law until the revision of 1913. The proceeding provided was a judicial one and of a special character and complete in itself, or made so by the adoption by reference of other provisions of the law. Section 87 of Act No. 92 provided for the form and contents of the petition (complaint) against the delinquent taxpayer, and provided that—

"All notices and process in suit under this chapter shall be sued out and served in the same manner as in civil actions in the district courts. . . . ''

Said section ends in these words:

"In all suits under this chapter, the general laws of this territory as to practice and proceedings in civil cases shall apply, so far as applicable and not contrary to this chapter."

Section 88 provides for the form and contents of the judgment to be entered, and ends in these words:

An "execution shall be issued thereon, which shall be executed, as in other cases of judgment and execution, and said judgment shall be a lien upon said land. The clerk of the district court shall, upon application of the tax collector or attorney, issue the execution herein provided for describing the real estate named in the judgment, and directed to the sheriff, and commanding him to levy upon, advertise and sell said property, or so much thereof as may be necessary to pay said judgment and subsequent costs, the same as sheriffs might do under ordinary execution."

It will be noted that the general law in the matter of procedure is adopted by reference. What, it may be asked, is meant by the expression "all notices and process in suit under this chapter shall be sued out as in civil actions in district courts"? Taken in connection with the subject matter treated in section 87, it might be contended that the word "process" has reference to the summons, but in the same breath, and as a part of section 87, "the general laws of this

territory as to practice and proceeding'' are made applicable as far as may be. Obviously, the legislature had in mind to provide an entire, complete scheme for the collection of delinquent taxes from the institution of suit to the sale of property under final process, and when it provided that all process should be sued out and served in the same manner as in civil actions it used the generic word ''process'' advisedly, showing that it included an execution. In 32 Cyc. 421, it is said:

''In a more enlarged  signification process includes all the proceedings of any court. As employed in statutes the legal meaning of the word 'process' varies according to the text, subject matter, and spirit of the statute in which it occurs.''

10 R. C. L. 1217, says that an execution is included in the phrase ''process in action.'' ''An execution is the usual process for carrying into effect a decree requiring a defendant to pay money into court.'' One of the definitions of an execution given in 23 C. J. 306, is:

''The process by which the debt, or damages or other things recovered, and the costs adjudged, is obtained.''

The statute (paragraph 2536, Civ. Code), defines process as including all writs, warrants, summons, and orders of courts of justice or judicial officers.

Then there is the sweeping provision that—

''The general laws of this territory as to practice and proceedings in civil cases shall apply.''

This language is certainly quite comprehensive enough to include an execution. The law in civil cases as to executions being that they may issue at any time within five years after entry of judgment, and thereafter only upon a renewal of the judgment, and the law in that regard being adopted by the stat-

utes for collection of delinquent taxes, it would seem that the state is placed in the same category as any ordinary litigant. We think the word "proceeding" is used here in its most comprehensive sense, and that it includes practically every step taken from the beginning of the action until the final process is executed. If, as is provided in section 88, the execution "shall be executed as in other cases of judgment and execution," it would have to be issued and executed within the time limit fixed by the general law.

Another reason why we think that the general statute on the limitation of judgments applies as against the state as a judgment creditor for taxes is found in section 97 of Act No. 92, *supra*. That section is that—

"No action for recovery of taxes against real estate shall be commenced, had or maintained unless action therefor shall be commenced within five years after delinquency. . . . "

The evident purpose of the legislature was to compel the state to act with diligence in the collection of taxes. It would seem remarkably strange for the legislature to prohibit the bringing of an action for back taxes after five years from the time they are due and to permit the state to obtain a judgment for back taxes and neglect to have execution issue for any number of years. We think, for the same reason that a time limit was fixed within which an action for back taxes might be brought, the time limit was also fixed within which the execution could be "sued out" and served. In other words, the statute, contrary to the general rule, has expressly provided that time shall run against the state in delinquent tax matters. The tax deed showing upon its face that the execution under which the property was sold to John Metz was issued on the Pedley judgment some seven years after its rendition and entry without renewal, the objection

to its introduction as evidence of title in the plaintiff should have been sustained.

Plaintiff's contention that it has title by prescription under the five-year statute of limitation, the court found unsupported by the evidence. The conditions under which such a title may be acquired are stated in paragraph 697, Civil Code, as follows:

"Every suit instituted to recover real property as against any person having peaceable and adverse possession thereof, cultivating, using, or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly recorded, shall be instituted within five years next after the cause of action shall have accrued, and not afterwards. . . . "

All these conditions must concur; that is, there must exist (1) peaceable and adverse possession for five years; (2) cultivation, use and enjoyment for five years; (3) payment of taxes, if any, for five years; and (4) all these things must be under claim of a deed or deeds duly recorded for the full period of five years. The testimony on the first and second conditions was sharply in conflict; the plaintiff's being that it had taken possession of land in 1914, that the land was inclosed with a fence, that it had cultivated some portion of it in crops and used all of it for pasturage; and the defendant's being that it was uninclosed, open, grazing land, upon which plaintiff's and other people's stock grazed and ranged alike unhindered, and that no part of it had been cultivated in crops since 1914, that the fence thereon, put there by plaintiff, was constructed in the year 1919.

It was the duty of the trial court to weigh this evidence and determine which side was right, and in the performance of that duty, all agree, the presiding judge had a better chance of forming a just conclusion than the appellate court has. We have stated this rule frequently, and invariably followed it where

23 Ariz.—19

the question was one of conflict of evidence. Often we find it difficult to agree with the trial judge, but because of his superior opportunity, by reason of having the living witnesses and parties before him, while we see the case only in print, the rule of adopting his conclusion has become settled.

In the tax suit against Pedley constructive service of summons was had upon the defendant. Defendant in this case introduced some evidence aside from the judgment-roll tending to show that the constructive service was defective. Plaintiff objected to this testimony and assigns its admission as error. We will not pass upon the question, because we find the defect in plaintiff's title is not in the failure to procure service upon the defendant in the tax judgment, but in the failure to have execution issued within the time fixed by law or in neglecting to revive the judgment, as the law provides, before the issuance of execution.

The judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.