[Civil No. 2775.   Filed January 20, 1930.]

[284 Pac. 153.]

HOME ACCIDENT INSURANCE COMPANY, a Corporation, Appellant, v. CARL PLEASANT, Appellee.

Messrs. Chalmers, Fennemore & Nairn and Mr. Henry W. Allen, for Appellant.

Mr. H. L. Smith, Mr. J. B. Underwood and Messrs. Cunningham & Carson, for Appellee.

ROSS, J.—This is an action brought to recover premiums upon two policies of indemnity insurance issued by the plaintiff, Home Accident Insurance Company, to the defendant, Carl Pleasant. One was a workmen's compensation and employer's liability policy, given to secure compensation to defendant's employees employed by him in the construction of a dam for the impounding of the waters of the Agua Fria River and other construction incident thereto. The other was a public liability policy to protect the defendant against legal liability to the public during such construction. The period of these policies was from April 27th, 1926, to April 27th, 1927, or one year. The policies provided for a normal rate and a short rate premium. If canceled at the request of the insured, the earned premium was to be computed and adjusted at the short rate; if canceled because of the insured's retirement from said construction work or at the request of the insurer, the earned premiums were to be computed and adjusted *pro rata* at the normal rate.

The plaintiff's causes of action are stated as springing from defendant's cancellation of said contracts of insurance at a time when he had not retired from said construction work, on the theory that such cancellation put in force under the agreement the short rate. The plaintiff fixes the date of such cancellation as October 12th, 1926, and computes its damages on the compensation and employer's liability policy at the short rate basis as $28,605.26, less a credit of $10,666.08, and on the public liability policy as $2,187.59, less a credit of $847.75.

Defendant's answer asserts the policies were canceled at the plaintiff's request, or, if at the defendant's request, that they were subsequently reinstated by the plaintiff. The answer admits an indebtedness calculated at the normal rate on the compensation and employer's liability policy of $18,864.95, less a credit of $10,666.08, and on the public liability policy of $1,443.70, less a credit of $847.75, and consents to judgment for the balance, with interest at six per cent from October 12th, 1926.

At the request of the plaintiff, the court made written findings of fact, and stated the facts found and the conclusions of law separately. The judgment thereon was that plaintiff recover on the compensation and employer's liability policy at the normal rate and on the public liability policy at the short rate, and for costs. Plaintiff has appealed from the judgment entered on the compensation and employer's liability policy and the order overruling its motion for a new trial, contending that under the law and facts it was entitled to judgment for damages computed at the short rate. The judgment in the cause of action on the public liability policy based on a short rate is not before us, no appeal having been taken therefrom and no cross-assignments being made.

Plaintiff by its assignments raises two questions, which, stated in its own language, are as follows:

"First: May the Industrial Commission of Arizona validly give its retroactive consent to cancellation of a Workmen's Compensation Insurance policy when the payment of the compensation insured by such policy has been secured in another of the methods prescribed by the Act (Workmen's Compensation Act) and did the Industrial Commission of Arizona so give its consent to the cancellation of the policy involved in this case; and

"Second: Did the appellant and the appellee agree on the 10th day of November, 1926, that the compensation policy here involved should be cancelled and

that such cancellation should be at the request of the plaintiff?"

The first proposition involves the power and duty of the Industrial Commission, which is charged with the administration of the Workmen's Compensation Law, especially those powers and duties pertaining to the cancellation of compensation insurance, which in turn involves a construction of the pertinent statutes bearing upon that subject. An exposition of those powers and duties must be based upon the particular facts as they exist in the actual controversy. The law can be interpreted and expounded only in connection with the facts. In relation to this proposition the undisputed facts are that on October 12th, 1926, the defendant wrote plaintiff a letter in these words:

"Please cancel our insurance policies, compensation and public liability, to take effect at noon today, October 12th, 1926."

On the same day defendant wired the Southern Surety Company, of Tulsa, Oklahoma, for compensation insurance, and in response thereto the vice-president of the Southern Surety Company came to Phoenix with a compensation and employer's liability policy indemnifying defendant and his employees in the performance of such construction, but, because the Southern Surety Company had not legally qualified to transact that kind of business in Arizona, its policy was not accepted or approved by the Industrial Commission. Defendant thereupon, on or about October 29th, orally requested plaintiff to reinstate policies as of October 12th. On October 30th the following letter was addressed to defendant:

"This is to certify that the above numbered policies (public liability and compensation policies) have been reinstated effective October 30th, 1926.

"It is further understood and agreed that subject to review of the outstanding claims between October 12th and October 30th, policies will be reinstated as of October 12th, 1926."

On November 10th agents of plaintiff went to defendant's office, and requested the return of the letter of October 30th, and defendant, not being able to find it, wrote the plaintiff as follows:

"Referring to your letter of October 30th, reference reinstatement of compensation and public liability policies covering our work for the Maricopa County Municipal Water Conservation District Number One, this letter has been mislaid and I am unable to return same to you, but it is our mutual understanding that the same shall be of no effect between us.

"Kindly acknowledge receipt."

On November 9th or 10th defendant filed his application with the Industrial Commission to become a self-insurer, and at the same time filed a surety bond for $100,000 with the Southern Surety Company as surety. On November 12th the application and surety bond were approved by the Industrial Commission, the bond being antedated to "October 12, 1926."

On November 12th, 1926, the plaintiff addressed the following letter to the Industrial Commission:

"Permission is respectfully requested to cancel the above captioned policy (compensation policy) for cause, as is set forth herein.

"Assured sent us written notice of cancellation effective *Noon October 12, 1926.*"

On this letter was placed this indorsement:

"Permission to cancel is hereby granted. O. K. B. H. C."

The letters "B. H. C." are the initials of the Honorable Burt H. Clingan, one of the members of the Industrial Commission.

The facts and circumstances surrounding some of these communications are in dispute, and will be considered in connection with the second proposition above stated. The above are the facts that must be considered in answering plaintiff's first proposition.

It will be noted that there were two requests for cancellation of policy, the one of October 12th, addressed by defendant to plaintiff, and the other of November 12th, addressed by plaintiff to the Industrial Commission. It was upon the latter request that the Industrial Commission acted, and, if the commission's consent was essential to cancellation, the policy was not canceled until that consent was given.

Section 48 of the Workmen's Compensation Law (chapter 83, Laws 1925, section 1422, Revised Code 1928) provides that compensation to workmen shall be secured in one of three ways: (1) Insurance in the state compensation fund; (2) insurance with stock corporations or mutual associations; and (3) self-insurance. The pertinent portion of section 48 reads as follows:

"Employers, . . . shall secure compensation to their employees in one of the following ways: . . .

"(2) By insuring and keeping insured the payment of such compensation, with any stock corporation or mutual association authorized to transact the business of workmen's compensation insurance in the state; provided, that any such stock corporation or mutual association must write and carry all risks or insurance for which application may be made to it which are not prohibited by other laws of Arizona, and any carrier assuming a risk shall carry it to the conclusion of the policy period unless cancellation is agreed to by the industrial commission and the employee ['employee' is a clerical error. In the Act passed by the Legislature and on file with the Secretary of State it is 'employer']; and provided, that any policy written shall be subject to cancellation at any time by the commission."

Under this provision there are two ways in which a policy may be canceled: One at the instance of the insurer, if "agreed to by the industrial commission and the employer," and the other by the Industrial Commission on its own initiation. Is there any other way? We think not. After providing compensation to workmen and their families, the legislature evinces by the whole context of the act a determination to secure the payment thereof, and accordingly has taken the common-law or contract right of cancellation out of the hands of the insurer and insured and placed it in the control of the Industrial Commission. The restrictions and limitations upon the right and power to cancel policy contained in section 48, *supra,* are expressly incorporated into and made part of the insurance contract by the following language:

"This Policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end of the Policy Period. The law of any state, in which this Policy applies, which requires that notice of cancellation shall be given to any Board, Commission or other state agency is hereby made a part of this Policy and cancellation in such state shall not be effective except in compliance with such law."

It will be observed that this provision requires not less than ten days' notice before cancellation shall be effective. Neither this provision of the contract nor the requirement of the law, which was also a part of the contract, was followed. To effect the cancellation of a compensation insurance policy, the conditions on which the right to do so depend must be strictly complied with. In *Hauter* v. *Coeur D'Alene Antimony Min. Co.,* 39 Idaho 621, 228 Pac. 259, 262, while the law recognized that insured and insurer, by giving the contract notice, might cancel the compensation

policy the court held that nothing short of a strict compliance therewith would be effective, saying:

"No case is called to our attention involving the cancellation of a policy of this kind given under the provisions of the Workmen's Compensation Act. In view of the fact that such contracts are issued not only for the benefit of the assured, but for the benefit of its employees, who necessarily have no control over the contract, we are of the opinion that such contracts should be canceled only by strict compliance with the conditions of the contract itself."

The Oklahoma statute states that no contract of compensation insurance shall be canceled until at least ten days after notice of intention to cancel specifying date of cancellation shall be filed in the office of the commission and also served on the employer. In *Maryland Casualty Co.* v. *Johnson,* 134 Okl. 174, 272 Pac. 833, 834, the sufficiency of a notice to cancel not conforming to the statute was before the court. It was there said:

"The policy provides that, if the method of serving notice of cancellation be at variance with any specific statutory provision, such statutory provision shall supersede such condition in the policy. It is admitted that no notice was given as required by the above provision of the statute and the terms of the policy for cancellation. It seems to be well settled that a compensation insurance policy cannot be canceled, so that the carrier may escape liability, without a compliance with the statute requiring the giving of 10 days' notice of intention to cancel such contract on a date specified in the notice and filed with the State Industrial Commission, and also served upon the employer. Such is the holding in *Home Petroleum Co.* v. *Chipman,* 106 Okl. 225, 233 Pac. 738."

See, also, *Gramo* v. *Greenpoint Contracting Co.,* 209 App. Div. 250, 204 N. Y. Supp. 419.

It is seen that, when the statute provides the manner by which a compensation policy may be canceled, it must be strictly pursued in order to be effective.

Under our statute it is not possible to cancel such policy, unless the Industrial Commission agrees to it. It is not enough that the insured may have agreed to the cancellation. The evident purpose of placing this control of the Industrial Commission over the employer's security for his employees was that there might exist no period of time in the execution of the work insured when they and their families would be without protection. We think it must be conceded that the compensation insurance issued by the plaintiff to the defendant was not canceled until November 12th, the date the Industrial Commission gave its assent thereto, and that it continued a binding and subsisting contract during the interim from October 12th, binding alike upon the insured and the insurer.

Plaintiff, however, contends that, when on the twelfth day of November the Industrial Commission agreed to the cancellation of its policy, such cancellation by relation became effective as of October 12th, because on that same date the Industrial Commission accepted and approved defendant's application for self-insurance, said application and the surety bond of the surety company to secure self-insurance being antedated to October 12th. It is argued that, because the surety bond of the Southern Surety Company in terms covered the period from October 12th to November 12th, it had the effect of wiping out plaintiff's liability during those thirty days; otherwise, it is contended, we would have not one way, but two ways of securing compensation, whereas the statute (section 48, *supra*) requires the employer to insure in but one of the ways therein mentioned.

This reasoning may show that the employer obligated himself to pay premiums on two policies, whereas the law requires but one. The antedating of the surety bond of the Southern Surety Company might make such company liable for compensation

of the employer's workmen from October 12th, but we do not understand upon what principle that would relieve plaintiff on its policy, the statute providing for release only by cancellation. The compensation policy issued by the plaintiff either was or was not binding up to November 12th. If it was binding to that date, no retroactive consent of the Industrial Commission could unbind it. Every claim for compensation arising before that date was a legal charge against the policy, and to relieve the insurance company therefrom would impair vested rights. The self-insurance was not a substituted security for compensation, but, if anything, an additional security from October 12th to November 12th, at which time the plaintiff's policy was indeed canceled.

Plaintiff cites two cases, the reasoning of which, while under statutes unlike ours, it suggests sustains its contention that the Industrial Commission's order of cancellation should be given retroactive effect. The first is *Eurich* v. *General Casualty & Surety Co.*, 152 Md. 209, 136 Atl. 546, 548. In that case the claimant prosecuted his demand against the employer and two surety companies, upon the theory that both were liable upon outstanding policies covering his compensation. It developed that the chief controversy was between the two insurers, and was as to whether they should share the loss or one of them bear it all. The court held that the new policy was effective at the date of the injury, the other having been canceled by agreement of the insurer and insured before the accident, although not in accordance with the Workmen's Compensation Act. Under such act, the commission had no control whatever of the cancellation, the only condition attached thereto, being that the cancellation notice should be filed with the commission a certain number of days before it became effective. It was not so filed. The ruling of the court was:

"The above-quoted provision of this act should not be held controlling in this case, where, at the suggestion of the insured with the consent of the insurer the policy was canceled, a new policy at once issued, and notice of its issuance and acceptance given to the Industrial Accident Commission prior to the happening of the accident; but if it were held that the statute contemplated the giving of such notice in all cases, then in this case the notice was waived by the insured for whose benefit this provision was inserted in the act."

The other case is *Gratopp* v. *Carde Stamping & Tool Co.*, 216 Mich. 355, 185 N. W. 675, 676, upon a similar state of facts and controversy, and the court there said:

"This provision [the statute requiring notice of cancellation to be filed with the Industrial Accident Board] is for the benefit of the employee by affording time to an employer to procure other insurance to replace that canceled. It will not be construed to hold a company which has canceled its policy where the employer has permitted no lapse, but has at once provided another insurer, as was done here. The General Accident was on the risk during the time in question. It accepted the premium. It filed its acceptance with the board. It should pay."

We think the reasoning of these cases is against the retroactive theory of plaintiff, as under them no lapsing of a policy did or could occur. Neither case involved the retroactive consent of the commission to a cancellation.

Having resolved the law against plaintiff's first proposition, we pass to its second, which is predicated upon the contention that, if the policy was canceled on November 12th instead of the earlier date, it was at the request of the defendant and not plaintiff. This is important, because under the contract, if canceled at the request of the defendant, the short rate would apply, but, if canceled at plaintiff's request,

the earned premium should be prorated. The trial court's finding of fact upon that issue is as follows:

"That on the 10th day of November, 1926, the plaintiff and defendant agreed that said policy should be cancelled, and that such cancellation should be at the request of plaintiff, and on the 12th day of November, 1926, plaintiff obtained from the Industrial Commission of Arizona its agreement to the cancellation of said policy."

It is assigned that the court erred in making this finding because it is contrary to, and without the support of, the evidence. In plaintiff's argument, however, it is quite freely admitted that there is some evidence sustaining the finding, but it is contended that such evidence is not reasonable or probable; that it is inherently improbable and unreasonable, and that the great weight of the evidence is to the effect that the Industrial Commission canceled the policy at defendant's request. It may be that both the plaintiff and defendant thought the policy was canceled on October 12th. We say this because of the negotiations of October 29th and 30th to reinstate, but those negotiations did not change or affect the status of the policy, for, as we have seen, the insured and insurer could not cancel it, unless agreed to by the Industrial Commission. At all events, these negotiations were called off at the meeting in defendant's office on November 10th, as evidenced by defendant's letter of that date to plaintiff. Three witnesses testified that at such meeting it was agreed between defendant and plaintiff's agents that the policy should be canceled at plaintiff's request. One of plaintiff's agents testified that no such agreement was made, and another said, if such agreement was made, he did not hear it. Upon this conflict the court made the finding above quoted. The fact is that the only notice of cancellation filed with the Industrial Commission was

the one by plaintiff of November 12th, to which the commission agreed.

Upon the rule we have uniformly followed, the evidence being in conflict, we will not disturb the court's finding. In *Gila Land & Cattle Co.* v. *Eads,* 23 Ariz. 282, 203 Pac. 549, 552, we stated the rule as follows:

"It was the duty of the trial court to weigh this evidence and determine which side was right, and in the performance of that duty, all agree, the presiding judge had a better chance of forming a just conclusion than the appellate court has. We have stated this rule frequently, and invariably followed it where the question was one of conflict of evidence. Often we find it difficult to agree with the trial judge, but because of his superior opportunity, by reason of having the living witnesses and parties before him, while we see the case only in print, the rule of adopting his conclusion has become settled."

A few of the other cases in which the rule will be found enunciated are *Miles* v. *Franz Lumber Co.,* 14 Ariz. 455, 130 Pac. 1112; *Farish* v. *Beebe,* 20 Ariz. 196, 179 Pac. 51; *Otero* v. *Wheeler,* 21 Ariz. 50, 185 Pac. 359; *Shelton* v. *Culley,* 25 Ariz. 530, 220 Pac. 229; *Stark* v. *Stark,* 32 Ariz. 392, 259 Pac. 401.

Under the state of facts as found the earned premium should be prorated to the period of November 12th instead of October 12th. The defendant's answer admitted an indebtedness to the plaintiff, prorated at the normal rate up to the latter date, and consented to judgment for that amount. In his answer he averred that the policy was in force to November 12th, and the court upheld him in that contention. We think the admission and consent for judgment should be construed as one for the full period the policy was in force, or up to November 12th. Under defendant's theory, he owed the nominal premium until the policy was canceled. It is but right and just that he should pay for the protection he received.

The judgment should be modified, not upon the allegations of the complaint, but upon the record and the admissions contained in the answer. The cause is therefore remanded, with directions to the trial court to enter judgment for the plaintiff for earned premiums, computed on the *pro rata* basis, up to the twelfth day of November, and, as thus modified, the judgment is affirmed, with costs to defendant.

LOCKWOOD, C. J., and McALISTER, J., concur.