[Civ. No. 13418. First Dist., Div. Two. Dec. 1, 1947.]

WALLACE OHRAN, Appellant, v. NATIONAL AUTO-
MOBILE INSURANCE COMPANY (a Corporation),
Respondent.

Walter K. Olds for Appellant.

John J. Taheny for Respondent.

NOURSE, P. J.—This is an action by the insured, Wallace Ohran, on a policy of compulsory motor vehicle liability insurance. The trial court held that as between the parties the in-

surance was effectually cancelled prior to the date of the accident which gave rise to the liability for which insured tries to recover. The insured appeals.

The facts are virtually undisputed: Appellant was a highway carrier operating under a permit from the Railroad Commission and was under the Highway Carriers' Act (Stats. 1935, ch. 223 as amended by Stats. 1937, ch. 722, §§ 3, 5, 6 and 7; 2 Deering's Gen. Laws, Act 5129a) required to maintain a policy of liability insurance as described in that act. On February 13, 1943, respondent issued to appellant such a policy covering a certain Mack truck, the only truck then used in appellant's business, which policy was to be effective from February 27, 1943, to February 27, 1944, and certificate of insurance was duly filed by respondent with the Railroad Commission. The policy consisted of a standard combination automobile policy form to which were attached certain endorsements among which form T. & S. 391 prescribed by the Railroad Commission for all policies insuring motor vehicles subject to its regulation, to the provisions of which we will revert later. The standard automobile policy contained a coinsurance clause which provides for proportional liability of insurers if there is more than one collectible insurance against the same loss and a cancellation clause which permits cancellation by insured by surrender or written notice and by insurer by at least five days' written notice with provisions for computation of earned premium due in each case of cancellation.

After appellant, in the beginning of March, 1943, had acquired a second truck, he asked Collins, his insurance broker and an agent of respondent, for possible cheaper rates in case of combined insurance on the two trucks. On or about the 13th of March, Collins told him the rates for combined insurance both of respondent and of the American Casualty Company. As the rates of the American Casualty Company were lower, appellant told Collins that he wished to place the insurance in that company and wished to cancel the policy of respondent. At the same time or shortly thereafter, he gave Collins the policy of respondent for that purpose. He asked Collins whether the policy could be cancelled flat (without payment of any premium); Collins noted on the policy, "Cancel Flat; not taken. Please notify R. R. Commission and pick up certificate." However, in the presence of appellant he asked Humphreys, the general agent of respondent, by tele-

phone, whether the policy could be cancelled flat and then informed appellant that it could not be done because of the Railroad Commission endorsement. Appellant nevertheless told Collins to have the policy of respondent cancelled. Collins then returned the policy to the general agent and ordered a policy from the American Casualty Company. This policy was effective from March 15, 1943, until March 15, 1944, but the certificate of insurance was not filed with the Railroad Commission until March 23, 1943. The policy contained the same railroad commission endorsement and coinsurance clause as the policy of respondent. When the general agent received the returned policy with Collins' note on it, and found out that Ohran was still registered with the Railroad Commission as a carrier and that no other certificate of insurance was on file, he sent on March 16th a notice of cancellation to the Railroad Commission effective March 26, 1943, which notice was received on March 17th. In a letter of that date Humphreys informed Collins of the issuance of the cancellation notice with the required 10 days' notice and of the necessity to make a charge ''for the time this policy was in force, that is from February 27th, 1943, to March 26, 1943,'' a bill as to which charge would be sent at the end of the notice period. Such bill for premium up to March 26, 1943, in the amount of $7.92 was paid by appellant on that date.

On March 22, 1943, the Mack truck described in respondent's policy while being used on appellant's business as a carrier severely injured one Jean Stimson, who on account thereof filed an action for damages against appellant in the amount of $15,573. Both respondent and the American Casualty Company were duly notified of the accident. The American Casualty Company took part in the defense of the action but respondent refused to participate. Respondent maintained this position when on November 6, 1943, it was informed that the claim could be settled for $6,000 of which, on the basis of the coinsurance clause, it was expected to contribute one-half. In the last part of November, 1943, appellant and the American Casualty Company settled the action for $5,750 of which amount each paid one-half or $2,875. This action was brought by the appellant for reimbursement of the amount so paid by him.

The trial court found in part that on or about the 15th day of March, 1943, the plaintiff caused said policy to be surrendered to the defendant for cancellation, and that on the 15th

day of March, 1943, said policy was received by the general agent of the defendant for said purpose, and that on March 17, 1943, the defendant duly filed with the Railroad Commission its notice of cancellation of said policy and certificate specifying that cancellation of said policy and certificate would be effective ten days thereafter.

The trial court concluded in substance that the plaintiff's surrender of the policy as provided for in the standard policy form with intent to cancel it and to replace it with the policy of the American Casualty Company terminated the insurance as between the parties effective from the surrender and that whatever liability the defendant had thereafter existed only in favor of third persons; that plaintiff had a right to waive the requirement of 10 days' notice and did waive it by the surrender for cancellation and by the replacement of the policy; that any payment which the defendant would be obliged to make after March 15, 1943, would be required solely by virtue of the Railroad Commission endorsement and should therefore be reimbursed by plaintiff as provided in that endorsement, so that defendant cannot be liable to plaintiff for any payment arising out of the accident of March 22, 1943.

The only question involved in this appeal is whether respondent's obligations as to appellant were terminated as of March 15, 1943, prior to the accident, or as of March 26th or 27th, 1943, subsequent to the accident.

Appellant contends that as a matter of law the policy could not be effectively cancelled as between the parties prior to the end of a statutory 10 days' period of notice to the Railroad Commission and that the evidence does not support a holding that as a matter of fact the parties had terminated it prior to that time. Both contentions seem correct.

Appellant's first contention is based on section 7 of the Highway Carriers' Act (Stats. 1935, ch. 223, as amended by Stats. 1937, ch. 722; 2 Deering's Gen. Laws, Act 5129a) which reads:

"The protection against liability as outlined in section 5 hereof must be continued in effect during the active life of the permit, and the policy of insurance, surety bond or personal bond shall be not cancellable on less than ten (10) days written notice to the Railroad Commission. The Railroad Commission shall have power to establish such rules and regulations as may be necessary to carry out the provisions of sections 5 to 7 inclusive."

He relies on *Heuer* v. *Truck Ins. Exchange,* 51 Cal.App.2d 497 [125 P.2d 90] in which case the defendant insurer, who had issued a compulsory liability insurance policy pursuant to the City Carriers' Act, which requires the same 10 days' notice as the Highway Carriers' Act, claimed, when sued by the heirs of the injured person, that the policy had been cancelled by mutual consent of insurer and insured prior to the accident, although the accident happened within the 10 days' notice period, and in which the court stated (p. 503): "It is a sufficient answer to this claim and to the authorities relied upon by defendant to point out that the policy here was issued to provide the compulsory, statutory insurance required by the above-mentioned act in order to qualify Robinson for a permit to operate under said act. Under the terms of said act, said policy could be cancelled only in the manner provided in section 6 of the act and it could not be cancelled by mutual consent of the parties in violation of the provisions of said section." Respondent distinguishes the Heuer case on several grounds of which the most important one with respect to the above quotation is that the action in the Heuer case was brought by the heirs of the injured person, the person the statutory provision intends to protect, whereas in the present case the only interested party is the insured, who, according to respondent, should be ruled by the terms of the contract he made.

Although this distinction is in itself material because of the recognized difference in position between an injured third person and the insured (*Olds* v. *General Acc. Fire etc. Corp.,* 67 Cal.App.2d 812, 820 [155 P.2d 676]), we do not think that section 7 of the Highway Carriers' Act can be construed as restricting the possibility of cancellation only with respect to injured members of the public without restricting the contractual right of the parties to cancel the insurance as between themselves. The words of the provision offer no basis for the distinction and we do not believe that such a distinction was intended. If it had been the intention of the Legislature to provide that notwithstanding cancellation by the parties the statutory liability of the insurer as to injured third persons would continue until 10 days after notice to the Railroad Commission the Legislature would have used language to that effect and not the words "not cancellable."

This is corroborated by *Home Accident Ins. Co.* v. *Pleasant,*

36 Ariz. 211 [284 P. 153] a case concerning an action of an insurer against the insured for the payment of premiums of workmen's compensation insurance. The Arizona Workmen's Compensation Law required agreement by the Industrial Commission to a cancellation. On October 12, 1926, the insured gave written notice to the insurer to cancel its policy as of that date. On November 12th the insurer requested permission of the commission to cancel on the basis of said notice. Prior to November 12th, the employer had filed application with the commission to become a self-insurer and had filed a surety bond of a surety company antedated to October 12, 1926. Both applications were granted on November 12, 1926. The court held that premium was due until November 12, 1926, using (at pp. 155, 156 [284 P.]) language to the effect that the Legislature had "taken the common-law or contract right of cancellation out of the hands of the insurer and insured and placed it in the control of the Industrial Commission''; that "when the statute provides the manner by which a compensation policy may be cancelled, it must be strictly pursued in order to be effective"; that the policy therefore was not cancelled until November 12th and "continued a binding and subsisting contract during the interim from October 12th binding alike upon the insured and the insurer."

In *Otterbein* v. *Babor & Comeau Co.*, 272 N.Y. 149 [5 N.E.2d 71, 72, 73, 107 A.L.R. 1510] a case not more directly in point than the Heuer case, *supra*, as the action was brought by an injured employee, the New York Court of Appeal in construing a 10 days' notice provision of the local Workmen's Compensation Law uses the following language:

"In determining the legislative intent as to when a contract of insurance shall be deemed cancelled within the meaning of subdivision 5 of section 54, we may consider the accepted definitions of the words 'cancel' and 'cancellation.' To cancel is 'to annul or destroy; to revoke or recall,' and, with respect to insurance, the word 'cancellation' means 'the termination either by the insured or the insurer or by both of insurance in accordance with the terms of the cancellation clause of a policy.' Webster's New International Dictionary (2d Ed.)

". . . It must be assumed that in enacting subdivision 5 of section 54, the Legislature had it in mind that a contract of insurance might provide that the coverage of the policy could be terminated by act of the carrier, by act of the employer, or by agreement between the carrier and employer. . . .

"Notice of cancellation must be given to the commissioner in all cases in order to make an attempted cancellation effective."

In accordance with these views it must follow that the Legislature enacted section 7 of the Highway Carriers' Act with full contemplation of the practice and use of cancellation clauses generally as between insurer and insured and that it intended therein to limit this right of cancellation according to the strict terms of the statute, making such notice indispensable for an effective termination both as to the parties and to the public.

No case has been cited to us in which it was held under a comparable statute, that a policy of compulsory insurance was cancelled effectively as between the parties although it remained in force as to the public. A few cases seem to imply such possibility. *Amalgamated Casualty Ins. Co.* v. *Winslow*, 135 F.2d 663, 664; *Tri-State Casualty Co.* v. *Speer*, 189 Okla. 191 [115 P.2d 130, 132]. With respect to the section here under consideration we do not accept this possibility.

Our conclusion that in this case the policy could not be effectively terminated as between the parties until March 26th is not affected by appellant's taking out of other insurance effective March 15th to replace respondent's policy. Respondent cites several cases with respect to noncompulsory fire insurance in support of the contention that the procuring of new insurance with the intent to have it take the place of the existing insurance, and with no intent to acquire additional insurance constitutes an effective, voluntary cancellation of the existing insurance, in which case the insured may not recover on both policies. This rule applies in general with respect to noncompulsory fire insurance, although not without exception. *Scheel* v. *German-American Ins. Co.*, 228 Pa. 44 [76 A. 507]. It can have no unrestricted application where the effectiveness of voluntary cancellation of a compulsory insurance depends on the compliance with statutory requirements. Where such requirements exist, a voluntary cancellation can no more be effectuated by attempted substitution without compliance than by mutual consent or surrender without it.

Respondent also relies on cases like *Automobile Insurance Co.* v. *Southern Transp. Co.*, (Tex.Civ.App) 101 S.W.2d 585 and Workmen's Compensation cases like *Gratopp* v. *Carde Stamping & Tool Co.*, 216 Mich. 355 [185 N.W. 675] and

*Eurich* v. *General Casualty & Surety Co.*, 152 Md. 209 [136 A. 546] which hold that the statutory period for notification of a commission of the cancellation of a policy of compulsory insurance does not apply, either with respect to the public or to the parties, if the policy, to the knowledge of the commission, is replaced without interruption by other satisfactory insurance. As to this point the authorities are divided. See the opposite holding in *Tri-State Casualty Co.* v. *Speer*, 189 Okla. 191 [115 P.2d 130] *supra; Cowles* v. *State Ins. Fund*, —— Idaho —— [173 P.2d 722]. However, none of these authorities is in point here as it is undisputed that in this case the Railroad Commission was not notified of the substitution prior to the accident. In such a situation the authorities are unanimous that the original insurer remains liable. See, for instance, *Phillips* v. *Iron County*, 273 Mich. 157 [262 N.W. 656] and *Zielke* v. *A. J. Marshall Co.*, 306 Mich. 474 [11 N.W.2d 209], both cases from Michigan, the jurisdiction where the principle of the Gratopp case, *supra*, originated and compare *Otterbein* v. *Babor & Comeau Co.*, 272 N.Y. 149 [5 N.E.2d 71, 107 A.L.R. 1510], *supra*, and *Arner* v. *Manhattan Spring &Couch Co.*, 264 N.Y. 501 [191 N.E. 535], New York cases which hold the original insurer liable notwithstanding substitution but where it does not appear whether the commission was notified of the new insurance, and *Home Accident Ins. Co.* v. *Pleasant, supra,* 36 Ariz. 211 [284 P. 153, 156].

▮▮ After our holding that the parties could not as between themselves cancel or terminate the compulsory insurance contract in any manner by consent, surrender or otherwise without compliance with the 10 days' notice provision, little need be said about the pretended right of the insured to waive said notice. Section 3513 of the Civil Code declares as a maxim of jurisprudence: "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." The notice provision of section 7 of the Highway Carriers' Act is not intended solely or even principally for the benefit of the insured, but mainly to further continuous protection of the public against damage caused by carriers, and control of the Railroad Commission over the continuous character of the protection. This is a public reason which excludes waiver. Respondent relies on *Eurich* v. *General Casualty & Surety Co., supra,* and *Automobile Insurance Co.* v. *Southern Transp. Co., supra,* which seem to recognize the power of the

insured to waive such notice requirement. However, in those cases it was held that because of substitution of other valid insurance known to the commission, no public interest was involved in the 10 days' notice requirement; if the requirement nevertheless subsisted it could only be for the benefit of the insured who then could waive it. In those cases the substitution rule of the Gratopp and Eurich cases is the indispensable basis for the recognition of the waiver. We have stated before that that substitution rule, even if it were accepted, would not apply in this case.

Although we have rejected the possibility of a cancellation of an insurance policy as meant in section 7, Highway Carriers' Act, effective as between the parties prior to the end of the 10 days' notice period provided for in that section, we are aware of the possibility that the insured by his acts or representations subsequent to the issuance of the policy may be estopped to avail himself of his rights under the policy or even that the good faith and honest dealing called for by the contractual relation (*Nelson* v. *Abraham,* 29 Cal.2d 745, 750 [177 P.2d 931]) might prevent recovery, even though not all elements of estoppel might be present.

However, the complete and undisputed facts in evidence in this case do not show any circumstance which could be held to bar appellant's recovery and leave no doubt that, at the time, it was the understanding of the parties that the policy would remain in full force and effect until March 26, 1943, the end of the 10 days' notice period.

The facts found by the trial court that the appellant caused the policy to be surrendered to respondent for cancellation and that on the 15th of March, 1943, said policy was received by the general agent of the respondent for that purpose do not necessitate the conclusion that the policy was terminated as of March 15, 1943.

A contract of insurance, including its termination, is governed by the same rules which ordinarily apply to other contracts and the manifest intention of the parties is normally decisive. Compare *Kast* v. *Dubuque Fire etc. Ins. Co.,* 112 Cal.App. 125, 132 [296 P. 324] ; *Stevenson* v. *Sun Insurance Office,* 17 Cal.App. 280, 288 [119 P. 529]. "All such transactions are to be construed reasonably and fairly, and in accord with the evident understanding of the parties at the time." *Hillock* v. *Traders' Ins. Co.,* 54 Mich. 531 [20 N.W. 571, 574]. In *Farris* v. *Commercial Union Fire Ins. Co. of New York,* 76

Okla. 331 [55 P.2d 432], where the insurer had given notice of cancellation with the five days' notice required by the policy, but the insured returned the policy prior to the end of the notice period, the court decided that the insurance terminated at the end of the five days' period and not at the moment of surrender, quoting from 14 Ruling Case Law 1016 as follows: "The courts appear to be unanimous in holding that the mere physical surrender of a policy by the assured does not terminate the contract, but that the question is one of intent to be gathered from all the facts and circumstances connected with the physical act of surrender."

In this case the evidence shows that the notice provision of section 7 of the Highway Carriers' Act was one of the circumstances which manifestly influenced the understanding of the parties as to the termination.

When Humphreys, the general agent of respondent, received the policy for cancellation it bore the note "Cancel Flat; not taken," a form of termination, differing from the surrender with payment of earned premium provided for in the cancellation clause of the policy and not effective without consent of the insurer. *Boutwell* v. *Globe & Rutgers Fire Ins. Co.*, 193 N.Y. 323 [85 N.E. 1087]; *Insurance Co. of North America* v. *Detroit & Security Trust Co.*, 51 F.2d 155, 159. Humphreys did not consent to this flat cancellation; he gave notice to the Railroad Commission that appellant's policy was cancelled "effective as of the 26th day of March 1943. . ." and in a letter to Collins, appellant's broker, intended for appellant, he informed him of the issuance of the cancellation notice with the required 10 days' notice, and wrote in part: "In view of the fact that the assured did file with the Commission, it will be mandatory that a charge be made *for the time this policy was in force, that is from February 27th 1943, to March 26, 1943.* . . . At the end of the cancellation notice, we will send you bill for the amount of earned premium." (Emphasis ours.) As stated, such a bill was then sent and paid.

Not only the words emphasized, but also the collection by respondent of earned premium up to March 26, 1943, constitute admissions that the policy was in full force and effect up to March 26, 1943, and entitled appellant to rely on respondent's being on the risk until that date. Compare *Hill* v. *Industrial Acc. Com.*, 10 Cal.App.2d 178, 185 [51 P.2d 1126]. In *Amalgamated Casualty Ins. Co.* v. *Winslow, supra,* the

fact that the first insurer had not received premium over the period in which the accident took place whereas the substituted insurer had received premium over that period was held decisive for the second insurer's duty to bear the loss. The same circumstance is stressed in the Gratopp and Eurich cases, *supra*, in which also the first insurer was exonerated. In the case at bar the coinsurance clauses in both policies prove that the parties had contemplated the possibility of more than one valid insurance for the same accident. That it was appellant's understanding that both insurance companies were on the risk is shown by the fact that he notified both of the accident and of the opportunity of settlement. The only possible conclusion supported by the evidence is that, both according to the manifest understanding of the parties and in fairness, respondent was on the risk and has to bear its equal share of the loss.

 It is however contended that the indemnity clause contained in the Railroad Commission endorsement bars appellant's recovery. This clause reads: "The insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement." The reasoning applied is that but for the agreement contained in the Railroad Commission endorsement appellant's surrender would have terminated the policy as of March 15, 1943; that all payments which respondent would have to make because of accidents occurring after that date would have to be reimbursed by appellant, and that appellant cannot recover where he is himself held to indemnify.

We do not think that this clause is intended to apply to the cancellation of a policy in accordance with the 10 days' notice provision of section 7 of the Highway Carriers' Act repeated and elaborated in the third paragraph of the Railroad Commission endorsement. The indemnity clause itself forms part of the second paragraph of the Railroad Commission endorsement, which contains the liabilities of the insurer as to third parties, which liabilities include those for injuries and death caused by vehicles operated by the insured although not specifically described in the policy and which also provides that those liabilities "shall not be affected

by any act, omission, or misrepresentation of the insured or his employees with regard to any warranty, condition, declaration, or provision of the policy.'' It is clearly to this increase in liability of the insurer provided for by this second paragraph that the indemnity clause refers. If the application of the indemnity clause is restricted to the cases of added liability mentioned in this same paragraph the insured will only be placed in the undesirable position of an indemnitor in case of unjustifiable conduct of himself or his employees— misrepresentation, breach of contract, use of an unauthorized vehicle. If, however, the application of this clause were extended so as to include the cancellation mentioned in the third paragraph, the insured could be made an indemnitor by acts of the insurer only—if the insurer should give five days' notice of cancellation to the insured, the policy would according to the standard form terminate at the end of this notice period, but according to the statute and the third paragraph of the Railroad Commission endorsement the insurer would remain liable until 10 days after receipt of the statutory notice by the Railroad Commission. It would be unreasonable and unfair if the insured would be under duty to indemnify the insurer during the interim. ■■ Although it seems doubtful whether the rule that ambiguous insurance policy provisions must be interpreted most strongly against the insurer (*Linnastruth* v. *Mutual Benefit H. & A. Assn.*, 22 Cal.2d 216, 218 [137 P.2d 833]) applies to provisions required to be inserted by statute or regulation (44 C.J.S. 1193) the general rule that where one construction would make a contract unreasonable or unfair and another construction, equally consistent with the language, would make it reasonable, fair and just, the latter construction is the one which must be adopted (*Cohn* v. *Cohn*, 20 Cal.2d 65, 70 [123 P.2d 833]; *Stein* v. *Archibald*, 151 Cal. 220, 223 [90 P. 536]) will apply as well to the construction of compulsory provisions.

■■ Because of the paragraph in which the indemnity clause is placed and because of the more reasonable and fair result reached we construe the indemnity clause as applying only to the added liability of the insurer caused by the provisions of the second paragraph of the Railroad Commission endorsement. ■■ We are not bound by the implied opposite construction of the trial court as no extrinsic evidence was taken in aid of its interpretation. *Estate of Wunderle,*

30 Cal.2d 274, 280 [181 P.2d 874] ; *Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825].

On the whole case we are satisfied that there is no escape from the conclusion that when the parties agreed to the cancellation of the first policy they acted in contemplation of the express terms of the statute declaring that such cancellation was not effective until the expiration of the 10-day period.

Therefore, the judgment is reversed.

Goodell, J., and Dooling, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 29, 1948.