[Civ. No. 8174. Fourth Dist., Div. One. Feb. 14, 1967.]

FARMERS INSURANCE EXCHANGE, Plaintiff and Respondent, v. KATHRYN VINCENT, Defendant and Appellant.

Carstens & Todd and William L. Todd, Jr., for Defendant and Appellant.

McInnis, Focht & Fitzgerald and William T. Fitzgerald for Plaintiff and Respondent.

WHELAN, J.—Plaintiff petitioned for a declaration that plaintiff was not obligated to the insured William F. Harkins on an insurance policy on the date Jirina B. Harkins, the wife of the insured, had an accident that caused damage to Kathryn Vincent.

William and Jirina were served with process and defaulted. Only Kathryn Vincent (defendant) has appealed from the judgment taken against all defendants.

The trial court found that the policy was not in effect on the date of the accident, September 23, 1963. We have concluded that holding should be affirmed.

### HISTORY OF THE INSURANCE

The following appears from the file of Farmers' Santa Ana office: An automobile liability policy was first issued to William for a six-month period commencing April 20, 1961, when he was a deputy city attorney of Burbank, California. The policy, #27-96376708, covered a 1954 Pontiac, was issued upon a partial payment of premium. On June 1, 1961, a reminder was mailed to William about the unpaid balance of premium, $27.42; on June 6 a notice was mailed to him that the policy would be cancelled effective June 23 unless the premium balance was paid by that date. Both notices were mailed to the residence address given by William in his application of April 20.

On August 3, William was quoted as inquiring why he had not been billed for the premium and as stating that he had been receiving his mail at a post office box; that his residence address was unchanged. He paid the premium.

On the same date an endorsement was issued that the policy was renewed.

On January 2, 1962, William reported a change of address to a law office in San Diego.

On January 10, 1962, a certificate was issued to William

showing coverage to April 20, 1962. At the expiration of that period, the insurance was renewed to October 20, 1962.

On February 26, 1963, William made a new application for insurance on the same car. Farmers issued a policy on the same date with an expiration date of August 26, 1963.

The policies were in the form of printed booklets to which were attached separately prepared declarations showing the coverages given, the premium for each type of coverage given, and the period of time covered by the insurance.

On April 5, 1963, a reminder was mailed to William of a balance of $4 unpaid on the premium; another such reminder was sent on May 7.

On May 27, formal notification was given William of a revision of the expiration date to August 3, 1963, representing an adjustment to correspond on a pro rata basis to the actual amount of premium paid. The notice contained this language:

". . . policy may be continued for successive terms of six months each thereafter by payment of sums required therefor."

An endorsement was issued on April 26, 1963, showing the renewal date of August 3, 1963.

During May and June, efforts were made by Farmers to obtain information from William about a minor loss. A request by mail and several office calls had been unproductive before the information was obtained. Because of that situation, the underwriting department of Farmers decided not to renew the policy beyond the expiration date.

On July 16, 1963, a letter was mailed to William and received by him stating:

"Cancellation Date: August 3, 1963

"Dear Mr. Harkins:

"Although you recently received a notice of the premium needed to continue your policy for another six months, we now ask that you disregard this notice. Unfortunately, our current underwriting requirements will not permit us to continue your coverage beyond the current term, and you are hereby notified that this policy will be cancelled and all liability of the Exchange will cease at 12:01 A.M. on the cancellation date shown above without further notice.

"Any premium payment you may have already forwarded will be refunded within a few days after it reaches our office.

"Undoubtedly you will wish to place your insurance coverage elsewhere and this advance notice should allow you sufficient time to do so."

On September 27, 1963, General Motors Acceptance Corporation (GMAC) wrote Farmers asking if there was mortgagee's coverage on a 1962 Pontiac purchased by William on September 21, 1962, as an additional automobile.

To that inquiry, someone in Farmers' office sent a "notice of cancellation to mortgagee or other interest" to GMAC that William's policy as to the 1962 Pontiac would be cancelled at 12:01 a.m. on October 22, 1963. Under the policy, William was obligated to give notice of the acquisition of an additional automobile within 30 days thereafter.

On October 30, 1963, William signed a report of the accident of September 23, 1963, involving a pedestrian, Kay Vincent.

On February 12, 1964, there was an inter-office communication from the San Diego claims office attached to the accident report that noted the setting up of a reserve of $10,000 with regard to the accident.

On March 4, 1964, the author of the last-mentioned communication sought information from the underwriting department as to whether the policy was in effect on September 23, 1963. He stated that "Insured denies . . . receiving any cancellation notice."

In addition to the foregoing, there was oral testimony that the ordinary course of business in Farmers' offices when a notice of cancellation was mailed to a policy holder was to include a certain "stuffer" which contained all the information called for by section 652, Insurance Code; that that practice was in accord with a home office directive entitled a "procedure bulletin" dated December 5, 1961, which followed an earlier one dated September 4, 1961.

It was Farmers' practice to send out, 30 days before the expiration date of a policy, a notice that on that date the renewal premium would be due in a certain amount.

William testified that he had received and read the letter of July 16, 1963; that he had not received nor seen the stuffer; that since receiving the letter of July 16, 1963, he had not made application to Farmers or any other company for an automobile liability policy; that he had not tendered any premium for a policy premium after receiving the letter "because the letter makes it very clear."

The notice to GMAC had been sent by Farmers by error; there was no evidence that information was given to William that such notice had been sent.

DEFENDANT'S CONTENTIONS

Defendant makes these contentions:

"1. Section 652 of the Insurance Code is applicable to the policy in question.

"2. The evidence fails to show that plaintiff complied with the requirements of Insurance Code section 652.

"3. Plaintiff is estopped to deny that coverage was in existence until October 22, 1963."

DEFENDANT'S CONTENTIONS AS AFFECTED BY THE FINDINGS

The court found: "That it is not true that there was any cancellation of said policy of insurance within the meaning of Sections 651 and 652 of the Insurance Code."[1]

Accordingly, no finding was made on the conflicting evidence whether the notice called for by section 652, Insurance Code, was given.

No finding was made as to any issue of estoppel against plaintiff based upon the sending of the notice to GMAC. On the other hand, no estoppel had been pleaded. The findings are specific and definite that the policy expired by its terms on August 3, 1963; that the intention of Farmers not to renew had been communicated to William by the letter of July 16, 1963, which also gave notice that the policy, by its terms, would expire on August 3, 1963; that William understood the meaning of the letter, made no effort to communicate with Farmers and made no offer to pay any premium to extend the coverage.

DEFENDANT'S FIRST CONTENTION

By this contention is meant that the termination of the policy in question was effected in such manner that the notice

---

[1]Section 651, Insurance Code, reads: "Notwithstanding any other provision of this code, no cancellation of an insurer of an auto liability insurance policy shall be effective prior to the mailing or delivery to the named insured at the address shown in the policy, of a written notice of the cancellation stating when, not less than ten (10) days after the date of such mailing or delivery, the date the cancellation shall become effective."

Section 652, Insurance Code, reads: "(a) Every notice of cancellation mailed pursuant to the provisions of Section 651 shall contain a statement on a form to be prescribed by the Insurance Commissioner setting forth a brief description of the California assigned risk plan (Article 4 (commencing with Section 11620), Chapter 1, Part 3, Division 2) and advising the assured of his possible right to obtain liability insurance coverage under the plan and a brief description of the manner in which he may avail himself of such plan.

"(b) *The requirements of subdivision (a) shall not apply to a notice of cancellation*

"(1) *For nonpayment of premium, or*

"(2) *Of a policy issued on assignment from such assigned risk plan.*"

provided by section 652, Insurance Code, was required to be given, and that if not given the policy continued in effect beyond the period for which it was written and for which a premium had been paid.

 We consider first whether the policy terminated as the result of a cancellation within the meaning of Insurance Code, section 651.

Defendant cites the following cases in support of her contention: *Mong* v. *Allstate Ins. Co.*, 15 App.Div.2d 257 [223 N.Y.S.2d 218], which defendant asserts is an exactly comparable case to the present case; *Peterson* v. *Allstate Ins. Co.*, 164 Cal.App.2d 517 [330 P.2d 843]; and three cases having to do with claimed forfeitures of life insurance policies.

The New York case of *Mong* v. *Allstate Ins. Co., supra,* points up a distinction between New York statutory law and California statutory law.

In *Mong,* the insured had been served with a notice that if a delinquent premium were not paid by March 12, 1957, the insurance was cancelled as of that date; at the time the notice was given, section 93-c of the Vehicle and Traffic Law provided in part: "No contract of insurance or renewal thereof for which a certificate of insurance has been filed with the commission shall be terminated by cancellation or failure to renew by the insurer until at least ten days after mailing to the named insured at the address shown on the policy a notice of termination. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. Every such notice of termination for any cause whatsoever sent to the insured shall include . . . a statement that proof of financial security is required to be maintained continuously throughout the registration period and that failure to maintain such proof of financial security is a misdemeanor.";[2] no such statement accompanied the notice; the stated purpose of the law was to assure "as far as possible that no uninsured automobile is operated in this state"; when the insurance had been issued, the insurer issued also a certificate of insurance required to be and which was filed with the Commissioner of Motor Vehicles whose records showed the certificate to be in effect at the date of the accident which occurred on November 28, 1957; the expiration date stated in the policy was October 19, 1957; no notice of termination for failure to renew was mailed at the termination date.

[2]The substance of section 93-c, with certain changes, is now section 313, Vehicle and Traffic Laws of New York.

In *Mong,* the court said, at page 220: " 'Once a certificate of insurance under section 93-b has been issued by the insurance company and filed with the Commissioner, the contract of insurance ceases to be a private contract between the parties. A supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions.' (*Teeter* v. *Allstate Ins. Co.,* 9 App.Div.2d 176, 181 [192 N.Y.S.2d 610, 616], affd. 9 N.Y.2d 655 [212 N.Y.S.2d 71, 173 N.E.2d 47].)

"The statute, which provides that operation of an uninsured automobile is a misdemeanor (§ 93-i), and notice thereof to the insured on termination of his contract of insurance, are the principal deterrents to operation of the uninsured automobile from the effective date of termination of insurance until the commissioner revokes the registration of the motor vehicle.

" 'To a large extent, the statutory scheme rests upon these penal sanctions. The burden is cast upon the insured to comply with the statute and to cease operating his automobile upon the date specified in the termination notice, if he does not obtain new insurance coverage before that date.' (*Teeter* v. *Allstate Ins. Co., supra,* 9 App.Div.2d pp. 180, 181 [192 N.Y.S. 2d p. 615].)

"Because of defendant's failure to comply with the provisions of Section 93-c, which says that no contract of insurance shall be terminated by cancellation except in the manner stated in the section, its attempted cancellation was ineffective. It did not terminate Drone's insurance contract. The insurance remained in force. On the expiration date, October 19, 1957, defendant failed to mail any notice to Drone of termination for failure to renew the policy as required by Section 93-c. The insurance was not terminated before the date of the accident on November 28, 1957."

California does not have a comprehensive statutory scheme requiring that all vehicles on the highway be insured, and that certificates of insurance for all vehicles be filed with the Department of Motor Vehicles. It does require evidence of insurance or other financial responsibility to be filed by persons who have been shown to be unable to respond in damages previously caused by ownership or operation of a vehicle. (Veh. Code, ch. 1, 2, 3, div. 7.)

It requires that the owner of any vehicle used for the transportation of passengers for hire, not subject to regulation by the Public Utilities Commission, maintain with the depart-

ment proof of ability to respond in damages. (Veh. Code, ch. 4, div. 7.)

It requires that any highway carrier deposit with the Public Utility Commission either a policy of liability insurance or a surety bond or other evidence of ability to cover liability for operation of the vehicle. (Pub. Util. Code, §§ 3631, 3632, 3633.) It provides, generally, that the insurance or bond shall not be cancelable on less than 30 days' written notice to the commission. (Pub. Util. Code, § 3634.)

In *Ohran* v. *National Automobile Ins. Co.*, 82 Cal.App.2d 636 [187 P.2d 66], a highway carrier attempted a cancellation of his policy by mutual consent. Notice to the commission had not been given, although other insurance had been obtained, evidence of which had not been filed with the commission. It was held that the first policy remained in effect. The court there said, at page 643: "[T]he Legislature enacted section 7 of the Highway Carriers' Act with full contemplation of the practice and use of cancellation clauses generally as between insurer and insured and that it intended therein to limit this right of cancellation according to the strict terms of the statute, making such notice indispensable for an effective termination both as to the parties and to the public."

Section 16433, Vehicle Code, provides that the certificate of insurance filed with the department under chapters 1, 2 and 3 of division 7 of that code "shall not be canceled except upon 10 days prior written notice to the department"; section 16483 provides for cancellation of the certificate by the department upon the substitution of other adequate proof of ability to respond in damages.

■ In the ordinary sense of the terms, there is a difference between cancellation of a policy and its lapse by reason of the expiration of the term for which written. Cancellation implies a termination prior to the expiration of the term for which written.

■ Sections 651 and 652, Insurance Code, are placed in a chapter entitled "Rescission." However, section 6 of the code provides:

"Division, part, chapter, article, and section headings contained herein shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning, or intent of the provisions of any division, part, chapter, article or section hereof."

The adoption, subsequent to all the events mentioned in this case, of additional code sections governing the cancellation of automobile insurance bespeaks a continuing and growing

legislative concern with the problem. Those sections, 660 to 664, are in chapter 10, entitled "Cancellation," a new chapter. Nevertheless, they must be held to be in *pari materia* with sections 651 and 652 in chapter 9, entitled "Rescission."

Both the 1963 amendment to section 652 and the 1965 enactments exempt from their application cancellation for nonpayment of premium.

There is nothing in the code sections themselves to indicate that by cancellation for nonpayment of premium anything was meant other than a cancellation that would be effective prior to the normal date of expiration.

To put it another way, nothing in the legislative language suggests that notice is required that a policy will expire at the end of the policy period for which a premium was charged and paid.

There is nothing at present in California law, other than the sections of the Vehicle Code and the Public Utilities Code dealing with compulsory insurance, that requires the giving of a special notice that a policy will expire by its terms on a certain date and will not be renewed at that time.

The regulations of the Insurance Commissioner, adopted pursuant to section 660, Insurance Code (Stats. 1965, ch. 1716, § 1, p. 3850), reflect an administrative interpretation of the word "cancel" as used in section 660.[3]

Section 2370 of article 7.5 of title 10, Administrative Code (in effect only after 1965), states: "This article shall not be applicable with respect to termination of coverage at the end of any policy period. . . ."

Section 2370 later makes a special provision for a "policy with a policy period (or term) of less than six months," stating that such a policy shall: ". . . for the purposes of this article, be considered to have successive policy periods ending each six months following its original date of issue and, regardless of its wording, any interim termination by its terms or by refusal to accept premium shall be a cancellation subject to this article."

No distinction appears in the Insurance Code sections be-

---

[3]Section 660, Insurance Code, reads: "The commissioner, by regulation, shall prescribe the grounds upon which an insurer may cancel a policy of automobile insurance. No insurer shall cancel a policy of automobile insurance except upon such ground or grounds as have been prescribed by the commissioner.

"The regulations of the commissioner shall be adopted, amended or repealed in accordance with Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 of the Government Code."

tween policies that have terms of less than six months and those that have terms of six months or more.

We think, regardless of what may be the precise meaning of the last-quoted portion of section 2370, Administrative Code, that in the instant case termination of coverage at the stated end of the policy period was not a cancellation within the meaning of section 651, Insurance Code.

Section 381, Insurance Code, requires that a policy specify the period during which the insurance is to continue. We have failed to find any provision in the Insurance Code or elsewhere regarding automatic extension or renewal of insurance, except where the maintenance of compulsory insurance is required, and excepting also the Administrative Code provision concerning policies with terms of less than six months.

The policy itself contains no provision for automatic renewal.

A course of conduct between the parties might sometimes afford an inference that a policy of insurance has been automatically renewed over a period of years so as to require notice thereafter of an intention not to renew. There was not evidence of any such course of conduct here; rather was there evidence on the part of Farmers to require William to toe the line in the matter of premium payments and otherwise.

We are satisfied that section 651, Insurance Code, did not require the giving of notice that a policy would not be renewed. We are not concerned, therefore, with the effect of a possible failure to include with the notice actually given the material mentioned in Insurance Code, section 652.

### DEFENDANT'S SECOND CONTENTION

The ruling of the trial court that there was no cancellation within the meaning of section 651, Insurance Code, made unnecessary a finding as to whether the information required to accompany a notice of cancellation had been sent.

The evidence that it had been sent is the presumption that the usual course of business had been followed; the evidence to the contrary is in the answer to a question put to William as follows:

"I show you Plaintiff's Exhibit 5 in evidence, and ask if you have ever received a document similar to this exhibit at any time from the Farmers Insurance Group or any of their agents, servants or employees?

"A. No, I have never seen one of these."

Whether such an enclosure accompanied the letter of July 16, 1963, would have been for the trial judge to determine.

## DEFENDANT'S THIRD CONTENTION

There is nothing in the record to show that estoppel was so much as mentioned in the trial court. A finding adverse to a claim of estoppel is implied necessarily in the finding that the policy was not in effect after August 3, 1963.

The claim of estoppel is based on the fact that a notice was sent in error to GMAC that the policy would be cancelled on October 22, 1963. Defendant asserts that the notice stated the cancellation would be for nonpayment of premium; the notice showed on its face the reason was otherwise; and it is likely that the 30 days intervening between the purchase of the new car, which William had not reported to Farmers, and October 22, was the 30-day period provided by the policy for reporting such purchase.

The basis of an estoppel is conduct or language that induces action, nonaction or belief; its elements must be proved. Since the notice sent to GMAC was not known to William, it could not have been as to him the basis of estoppel. Moreover, the notice was not sent until after the accident involving defendant.

Finally, the inquiry by GMAC to Farmers, and Farmers' response, were concerned with mortgagee's insurance, not public liability coverage.

Defendant argues that in fact Farmers considered the policy to have been renewed as though the letter of July 16, 1963, had been sent in error. Thus, she would bring herself within the theoretical framework of *Peterson* v. *Allstate Ins. Co.*, *supra*, 164 Cal.App.2d 517, where the trial court found that a notice of cancellation had been sent by mistake.

Here, however, the findings of the trial court are otherwise. Having considered the loose use of the word "cancellation" in the documentary evidence and testimony of the witnesses for Farmers, and the inconsistencies in their office records, the court found that the policy expired automatically by its terms; that the letter giving notice of intention not to renew was not a cancellation. The findings are supported by the evidence and support the judgment.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J. concurred.