974 F.2d 1196
 AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellee,
v.
Ned MERRITT; Julius T. Toth, Jr.; Foothill Service
Corporation; Nordhoff et al., Defendants-Appellants,
RFS Development Corporation, et al.,
Defendant-Counterclaimant-Crossclaimant-Appellant.
 No. 91-55344.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1992.
Decided Sept. 9, 1992.
 
 Robert D. Phillips, Jr., Bowles & Verna, Walnut Creek, Cal., for defendant-appellant RFS Corp.
 Jeanette Torrel Maginnis, Maginnis & Maginnis, Los Angeles, Cal., for defendants-appellants Ned Merritt, Julius T. Toth, Jr., Lisa Toth and Ida Toth.
 Keith A. Turner, Sedgwick, Detert, Moran & Arnold, Los Angeles, Cal., for plaintiff-appellee Aetna Cas. & Sur. Co.
 Appeal from the United States District Court for the Central District of California.
 Before: BOOCHEVER, NORRIS and NOONAN, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 Aetna Casualty and Surety Company, a Connecticut corporation, (Aetna) brought suit for declaratory judgment against Ned Merritt and Julius T. Toth, Jr., citizens of California, Foothill Service Corporation (Foothill), and RFS Development Corporation (RFS), California corporations. Certain of these defendants had been insured by Aetna, and Aetna sought a declaration that it had no obligation to defend the suit brought against them by Toth or indemnify them for damages payable to Toth. The district court granted the declaratory judgment requested. We now affirm the judgment of the district court.
 
 FACTS
 
 2
 Foothill and Merritt were co-venturers in Nordhoff 36, a joint venture condominium construction project. RFS is the successor in interest to Foothill. The Toths were injured in an explosion and fire on January 7, 1987 that was caused by a gas leak in a condominium that was part of the Nordhoff 36 project.
 
 
 3
 According to the declaration of Ned Merritt, he purchased his policies from Aetna issued through the insurance broker James Econn & Company (Econn). The first policy was in effect from July 21, 1980 to July 1, 1981; the second from July 1, 1981 to April 1, 1982; the third from April 1, 1982 to April 1, 1983; and the fourth from April 1, 1983 to April 1, 1984. Merritt and Nordhoff 36 were the named insureds under these policies. By special endorsement to the 1980-81 policies, the city of Los Angeles was also an additional insured on these policies.
 
 
 4
 The relevant terms of all the policies were as follows:
 
 
 5
 Aetna will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the company [Aetna] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage.
 
 
 6
 The definitions defined the following terms in bold-face type indicated here by italic:
 
 
 7
 "bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
 
 
 8
 . . . . .
 
 
 9
 "completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed.
 
 
 10
 . . . . .
 
 
 11
 "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;
 
 
 12
 . . . . ."property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;
 
 
 13
 [T]he company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provide such bodily injury arises out of (a) a condition in the insured premises, or (b) operations with respect to which the named insured is afforded coverage for bodily injury liability under the policy.
 
 
 14
 The endorsement on 1980-81 and 1981-82 in favor of the City of Los Angeles provided:
 
 
 15
 Pursuant to Section 11.54 of the Los Angeles Administrative Code, the policy to which this endorsement is attached shall not be subject to cancellation, reduction in coverage or non-renewal except after written notice to the City Attorney of the City of Los Angeles by certified mail, return receipt requested, not less than thirty (30) days prior to the effective date thereof ...
 
 
 16
 On November 4, 1987 the Toths filed a personal injury action in Los Angeles Superior Court against Merritt, Nordhoff 36, RFS Development and Foothill. Merritt tendered the defense of this action to Aetna. On May 5, 1989 Aetna refused the tender on the ground that none of its policies were in effect at the time of the 1987 explosion.
 
 PROCEEDINGS
 
 17
 On September 14, 1990 Aetna filed the complaint in this case seeking a declaratory judgment as to the first three policies, not mentioning the policy in effect from April 1, 1983 to April 1, 1984. The defendants filed a counterclaim against Aetna, Econn and Econn's agents, all citizens of California. The defendants also moved to dismiss Aetna's claim for failure to join Econn and his agents, who they alleged were necessary parties. The district court denied the motion to join the brokers and ordered Aetna to move for summary judgment.
 
 
 18
 Meanwhile, on October 10, 1990, slightly less than a month after Aetna's suit had been filed in the district court, Merritt and the Toths filed an action in the state court for a declaration that Aetna and the brokers were liable. RFS, Foothill, and Nordhoff 36 were not parties. The state court stayed its proceeding in favor of the federal court and did not rule until after the district court's decision. RFS entered the state case only after the district court's decision.
 
 
 19
 In opposition to Aetna's motion for summary judgment Merritt introduced the fourth policy, running from April 1, 1983 to April 1, 1984, describing its copy as "true and correct." Merritt noted that this policy extended the coverage of the three other policies and declared that the fourth policy also "raises a triable issue of fact as to the full Merritt liability coverage." Merritt noted that it had just received a copy of the policy from Econn and that the policy in fact did not appear to be complete since the required endorsement was missing. Merritt argued that in the light of this new evidence summary judgment should not be granted "since further policies and provisions may exist extending the coverage of the three policies." RFS also introduced the fourth policy as part of its objection to summary judgment, noting that RFS had not been able to conduct discovery directed towards the fourth policy.
 
 
 20
 On February 6, 1991 the district court dismissed the counterclaim, denied the defendants' motion for summary judgment and granted Aetna's motion for summary judgment. The decision of the district court incorporated all four insurance policies.
 
 
 21
 The defendants appealed.
 
 ANALYSIS
 
 22
 Jurisdiction. The defendants argue that the district court abused its discretion in entertaining Aetna's declaratory judgment action, citing Continental Casualty Co. v. Robsac Industries, 947 F.2d 1367, 1370 (9th Cir.1991). Robsac does not control this case. In Robsac we merely held that the district court should not exercise its diversity jurisdiction in a declaratory judgment action to resolve a dispute between insurer and insured over coverage when a state court action involving the same parties and the same issue of coverage was already pending. We stated that the federal suit would have been reactive even if it had been filed first, but that conclusion was dictum since on the facts the federal suit was not filed first.
 
 
 23
 Here there was no state action pending when Aetna filed its declaratory relief action. We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage. The district court below properly heard the case.
 
 
 24
 Aetna's Liability Under The Policies. The explosion and fire that injured the Toths occurred on November 4, 1987. Each policy states that it covers bodily injury "which occurs during the policy period." Similarly, property damage is injury or destruction "which occurs during the policy period." The last policy expired April 1, 1984. Aetna is not liable for the 1987 injuries.
 
 
 25
 The "completed operations hazard" clause did not extend Aetna's liability for bodily injury. This clause did extend coverage after construction had been completed, but the clause referred only to bodily injury and property damage. The definition of "bodily injury" and "property damage" limit liability to such injury or damage sustained during the policy period. The clause was not a promise by Aetna to insure the property for an indefinite time after the construction was complete.
 
 
 26
 The insureds argue that the policies were not subject to "non-renewal" except after notice to the City Attorney of Los Angeles. The first three policies were renewed. Merritt declares that the "non-renewal" endorsement was attached to the 1984 policy, and we accept that declaration as true for summary judgment purposes. But two obstacles exist to its use by the insured here: First, the endorsement is not for their benefit but for that of Los Angeles. Second, "non-renewal" is a technical term, meaning a notice by the insurer that it is unwilling to renew the policy. Such is the statutory definition governing automobile policies in California. Cal.Ins.Code § 660(h). We apply the automobile rule by analogy here. The 1984 policy's termination was not a non-renewal, but an expiration. Absence of a notice from Aetna to this effect did not extend it indefinitely and without payment of premiums.
 
 
 27
 The Adjudication of the Fourth Policy. The fourth policy was not mentioned by Aetna in its complaint and was introduced by RFS to show that summary judgment was inappropriate. RFS stated that the fourth policy was "the relevant insuring agreement." Merritt joined in this contention, stating that the fourth policy raised "a triable issue of fact." Aetna contends that the insured thereby gave implied consent to trial on the fourth policy. RFS now denies that it gave such consent. Merritt now is silent as to its consent.
 
 
 28
 The case is essentially different from one where the new evidence was introduced incidentally by the party that then wanted to use it to amend the pleadings. LaLonde v. Davis, 879 F.2d 665, 667 (9th Cir.1989); Campbell v. Trustees of Leland Stanford, Jr. Univ., 817 F.2d 499, 506 (9th Cir.1987). What is clear is that both RFS and Merritt maintained that the fourth policy should defeat Aetna's motion. They, not Aetna, put the fourth policy at issue. The issue was new, that is, the new policy was not merely new evidence as to the meaning of the previous three policies. United States for Use of Seminole Sheet Metal v. SCI, Inc., 828 F.2d 671, 677 (11th Cir.1987). RFS and Merritt therefore gave the implied consent required by Fed.R.Civ.P. 15(b). They cannot now complain that the issue was decided.
 
 
 29
 RFS contends that it was denied discovery as to the fourth policy. It does not suggest what discovery would have revealed. The liability of Aetna depended on the policy terms. The terms, including the non-renewal endorsement, were before the court. There was no unfairness in the court ruling on the policy's meaning. United States v. Grayson, 879 F.2d 620, 625 (9th Cir.1989).
 
 
 30
 AFFIRMED.