[No. S042745. Dec. 29, 1995.]

TRANSAMERICA INSURANCE COMPANY, Plaintiff and Appellant, v. TAB TRANSPORTATION, INC., Defendant and Appellant.

392

## COUNSEL

Michel & Manning, Michael D. Michel and J. Martin Sproul for Plaintiff and Appellant.

Long & Levit, J. Kevin Synder and Edward Muramoto as Amici Curiae on behalf of Plaintiff and Appellant.

Hardin, Cook, Loper, Engel & Bergez, Ralph A. Lombardi and Kevin J. Chechak for Defendant and Appellant.

Peter Arth, Jr., Anne K. Mester and Joel T. Perlstein as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**KENNARD, J.**—A 1989 collision between an Amtrak train and a truck owned by a licensed highway carrier, Tab Transportation, Inc. (hereafter Tab), caused the deaths of three persons and injured several others, resulting in $6 million in legal claims for wrongful death, personal injury, and property damage against Tab. Tab sought recovery under three insurance policies issued by different insurers for different policy periods. Pertinent here is a $500,000 one-year liability policy issued by Transamerica Insurance Company (hereafter Transamerica).

Under the terms of the Transamerica policy, coverage commenced on February 1, 1980, and ended on February 1, 1981. Ordinarily, an insurance

company incurs no liability for an accident that occurs after the policy period has ended. But this is not an ordinary case, as explained briefly below.

■ Highway carriers licensed in California are subject to a regulatory scheme administered by the Public Utilities Commission (hereafter PUC), requiring them to obtain adequate liability insurance and to submit proof thereof to the PUC. Underlying this requirement is the recognition of the need to protect the public " 'against ruinous carrier competition and such possible attendant evils as . . . inadequate insurance . . . .' [Citation.]" (*Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 233 [178 Cal.Rptr. 343, 636 P.2d 32].)

To ensure that the public is so protected at all times, the regulatory scheme requires—by means of a standard PUC form endorsement attached to the policy—that a liability policy issued to a highway carrier continue "in full force and effect until canceled," by giving 30 days' written notice to the PUC. The effect of attaching the endorsement to the policy, as we held in *Samson* v. *Transamerica Ins. Co.*, *supra*, 30 Cal.3d 220, 231, is to automatically incorporate the provisions of the endorsement into the policy. Here, incorporation of the provisions of the endorsement into the Transamerica policy converted it from a one-year term policy that covered the period from February 1, 1980, until February 1, 1981, to a policy that remained continuously in effect until canceled. Because Transamerica failed to give the PUC the required notice of cancelation when there was no policy renewal by Tab, the policy was still in effect and thus provided coverage for Tab at the time of the 1989 accident.

Transamerica, however, is entitled to reimbursement from Tab for any payments made under the policy. The reason is this: The standard form endorsement just mentioned states that the highway carrier "agrees" to reimburse the insurer for any payment the insurer would not have been obligated to make under the provisions of the policy "except for the agreement contained in [the] endorsement." Because, as explained earlier, Transamerica would not have been liable for the damages incurred in the 1989 accident under the policy it issued to Tab "except for the agreement contained in [the] endorsement" (that its policy remain in effect until canceled by written notification to the PUC), Transamerica has a right to indemnity from Tab.

## I

Tab is a commercial trucking company regulated by the PUC under the Highway Carriers' Act. (Pub. Util. Code, §§ 3501, 3511.)[1] The statutory scheme requires highway carriers such as Tab to maintain liability protection in specified amounts (§ 3631) and to provide the PUC with proof of such protection (§ 3632). Such proof may be established by filing a "certificate of insurance" with the PUC. (§ 3633.)

In 1980, to comply with the insurance requirements of the Highway Carriers' Act, Tab purchased from Transamerica a policy providing liability coverage for the period February 1, 1980, to February 1, 1981. As proof of insurance, Transamerica filed the requisite certificate of insurance with the PUC. The certificate, a standard PUC form, provided in relevant part: "Transamerica Insurance Company . . . has issued to Tab Transportation, Inc. . . . the policy of Automobile Bodily Injury Liability and Property Damage Liability Insurance herein described which, by the attachment of the Public Utilities Commission of the State of California Endorsement TL 675-Series, has been amended to provide the liability protection authorized or required for motor carriers of property pursuant to General Order No. 100-Series and by the pertinent rules, orders and regulations of the Public Utilities Commission." The certificate also stated that the policy was "Effective 2-1-80 Until Canceled."

Shortly before the February 1, 1981, expiration date of the Transamerica policy, Tab replaced it with a one-year term policy issued by Federal Insurance Company (hereafter Federal), which then filed the requisite certificate of insurance with the PUC. In 1989, Tab purchased a $1 million liability policy from Home Indemnity Company (hereafter Home) to cover the period April 1, 1989, to April 1, 1990. As proof of coverage, Home filed a certificate of insurance with the PUC. Although Tab had replaced the Transamerica policy with the Federal policy, which in turn was replaced by the Home policy, neither Transamerica nor Tab ever notified the PUC of the cancelation of the Transamerica policy.[2]

On December 19, 1989, one of Tab's tractor-trailer trucks collided with an Amtrak passenger train at a railroad crossing in Stockton, killing the Tab driver and two Amtrak crewmen, and injuring several Amtrak passengers.

---

[1] Further statutory references are to this code.

[2] By letter dated August 9, 1990, the PUC advised Transamerica that its certificate of insurance for the 1980 policy was still on file and would remain in force until Transamerica canceled the certificate by completing and filing PUC form TL 568. Transamerica did not respond to this letter.

When sued for $6 million for wrongful death and personal injuries, and for property damage to the train and the tracks, Tab demanded coverage under each of the three insurance policies just mentioned. Two of the three insurers, Federal and Home, each contributed the policy limits (a total of $1.6 million) to a global settlement in which Tab admitted liability, leaving the question of damages to be determined at trial. The third insurance company, Transamerica, did not participate in the settlement.

In May 1992, Transamerica filed this action for a declaratory judgment that it was not liable for damages arising from the 1989 train collision under the policy it had issued to Tab in February 1980. According to Transamerica, that policy had expired of its own terms on February 1, 1981. In the alternative, Transamerica asserted that if liable on the policy, it was entitled under PUC regulations to be reimbursed by Tab for any payments made under the policy. Tab cross-complained, asserting entitlement to coverage under the policy. Tab pointed out that the "certificate of insurance" that Transamerica had filed with the PUC expressly stated its policy was "Effective 2-1-80 Until Canceled." Tab argued that the policy continued in effect because of Transamerica's failure to give the PUC the requisite 30 days' written notice of cancelation. The trial court granted Tab's motion for summary adjudication on this basis.

The case proceeded to trial on the remaining issue of whether Transamerica was entitled to reimbursement by Tab. Transamerica offered into evidence the PUC's Endorsement TL 675-Series (hereafter at times referred to as the standard form endorsement). The endorsement reads: "TO BE ATTACHED TO AND MADE A PART OF ALL POLICIES INSURING MOTOR VEHICLES SUBJECT TO REGULATION BY THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA." The endorsement contains certain provisions that the PUC requires in highway carrier liability policies, including one providing for the highway carrier to reimburse the insurer for any payment made as the result of obligations arising under the endorsement. Based on this latter provision, the trial court ruled that Transamerica was entitled to reimbursement from Tab for payment of damages resulting from the 1989 train accident.

Both parties appealed. Transamerica challenged the trial court's summary adjudication in favor of Tab on the issue of coverage. Tab cross-appealed on the issue of Transamerica's right to reimbursement. The Court of Appeal reversed on the coverage issue. It concluded that the Transamerica policy had expired of its own terms on February 1, 1981, and that Transamerica therefore had no obligation to give 30 days' written notice to the PUC of its

intent to cancel the policy. Because it determined the issue of coverage in favor of Transamerica, the Court of Appeal did not address Transamerica's right to reimbursement. We granted Tab's petition for review, which challenged the Court of Appeal's holding as contrary to the PUC's regulatory scheme.

II

The Highway Carriers' Act (§ 3501 et seq., hereafter the Act), which has been in effect since 1935, regulates the operation of commercial truckers on California's public highways. Its preamble states: "The use of the public highways for the transportation of property for compensation is *a business affected with a public interest*. It is the purpose of this chapter to preserve for the public the full benefit and use of public highways consistent with the needs of commerce without unnecessary congestion or wear and tear upon such highways; to secure to the people just and reasonable rates for transportation by carriers operating upon such highways; and to secure full and unrestricted flow of traffic by motor carriers over such highways which will adequately meet reasonable public demands by providing for the regulation of rates of all transportation agencies so that adequate and dependable service by all necessary transportation agencies shall be maintained and the full use of the highways preserved to the public." (§ 3502, italics added.)

The Act is "designed to protect the public from a broad range of potential problems incidental to the transportation of property." (*Samson* v. *Transamerica Ins. Co., supra*, 30 Cal.3d 220, 233.) Of paramount concern in the regulation of highway carriers is " 'protection of the public against ruinous carrier competition and such possible attendant evils as improperly maintained equipment, inadequate insurance, and poor service.' " (*Ibid.*, quoting *Keller* v. *Thornton Canning Co.* (1967) 66 Cal.2d 963, 967 [59 Cal.Rptr. 836, 429 P.2d 156].)

The Act requires all licensed highway carriers to carry "adequate protection" against liability.[3] (§ 3631.) This may be achieved by means of an insurance policy, a surety bond, or evidence acceptable to the PUC of the carrier's qualification as a self-insurer. (§ 3632.) Any insurance policy must be issued by "a company licensed to write such insurance in the state," or by

---

[3]By regulation, as set out in General Order No. 100-I, the PUC requires highway carriers to show adequate protection against liability in an amount not less than $600,000 per accident consisting of the following: not less than $250,000 for bodily injuries to, or death of, one person with a total protection against liability for bodily injuries or death in a single accident of not less than $500,000; and not less than $100,000 for damage or destruction of property in a single accident.

certain "nonadmitted insurers," and the policy must "meet the rules promulgated therefor by the [PUC]." (*Id.*, subd. (1).) Section 3633 allows proof of such insurance to be filed with the PUC in the form of "a certificate of insurance issued by the company issuing the policy."

Section 3634 requires that "protection against liability shall be continued in effect during the active life of the permit," and that "[t]he policy of insurance or surety bond *shall not be cancelable on less than 30 days' written notice to the commission*, except in the event of cessation of operations as a highway carrier as approved by the commission." (Italics added.)

Section 3635 authorizes the PUC to adopt rules and regulations necessary to enforce the insurance requirements for highway carriers. Under this authority, the PUC promulgated General Order No. 100, which sets forth various provisions that must be included in every policy. Pertinent here are these two: "(6) A policy of insurance, or surety bond, evidencing such protection, shall not be cancelable on less than thirty (30) days' written notice to the Public Utilities Commission, such notice to commence to run from the date notice is actually received at the office of the Commission. [¶] . . . [¶] (8) *Every insurance policy*, surety bond or equivalent protection to the public shall contain a provision that such policy, surety bond or equivalent protection *will remain in full force and effect until canceled in the manner provided by Section (6) of this General Order*." (Italics added.)

General Order No. 100 is incorporated into the PUC's standard form endorsement, which, as we have pointed out earlier, is attached to every policy of insurance purchased by a highway carrier. In the section that follows we discuss the significance of such attachment, an issue we addressed previously in *Samson* v. *Transamerica Ins. Co.*, *supra*, 30 Cal.3d 220.

### III

Samson v. *Transamerica Ins. Co.*, *supra*, 30 Cal.3d 220, involved an insurance policy purchased by a highway carrier to satisfy PUC requirements of liability coverage. We explained that such a policy differs from other liability insurance policies: "Where insurance coverage is required by law, the statutory provisions are incorporated into the insurance contract. 'The obligations of such a policy are measured and defined by the pertinent statute, and the two together form the insurance contract. . . . [T]he insurance carrier is done no injustice when its rights are determined thereunder.

[¶] Any provisions of such a policy which are in conflict with the pertinent statutes are nullified and superseded to that extent, particularly where the policy itself[] expressly so provides.' (6c Appleman, Insurance Law and Practice (Buckley ed. 1979) § 4463, pp. 615-617, fns. omitted [citation].)" (*Id.* at p. 231.)

Then, turning to the PUC's standard form endorsement, we pointed out in *Samson* that "the insurance policy, in the endorsement, referred specifically to the regulations of the P.U.C. and stated that it was designed to comply with the requirements of the 'General Order No. 100-Series.'" (*Samson* v. *Transamerica Ins. Co., supra,* 30 Cal.3d at p. 231.) This, we said, meant that "the requirements of the Public Utilities Code and of General Order No. 100-H were made part of the insurance contract by its own provisions as well as by the general rule of construction concerning insurance mandated by statute." (*Ibid.*) Therefore, we concluded, interpretation of the insurance policy must be by "reference both to its express terms, and to the relevant statutory and P.U.C. provisions." (*Ibid.*)

██ ██ ▪ ▪ As in *Samson* v. *Transamerica Ins. Co., supra,* 30 Cal.3d 220, the liability policy at issue here was bought by a highway carrier (Tab) to satisfy PUC regulations. Because this policy is one "required by law," under *Samson* the policy must be read in light of its original provisions as well as those added to the policy by the PUC's standard form endorsement attached to the policy.[4]

██ As initially written, the Transamerica policy was to remain in effect for one year only, from February 1, 1980, until February 1, 1981. But, as we have pointed out earlier, the policy was amended by the standard PUC endorsement, which provides for inclusion in the policy of the PUC's

---

[4]Even though Transamerica, as part of its claim for reimbursement, introduced evidence at trial that the standard form endorsement had amended the policy, it now asserts that we cannot consider the endorsement for purposes of deciding the coverage issue because the document was not considered by the trial court in granting summary adjudication on that issue. Not so. " '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10], quoting *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) An exception to this rule—that a party should not be expected to defend disputed factual issues on appeal (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738])—does not assist Transamerica, because Transamerica does not dispute the fact that the standard form endorsement amended its policy.

General Order No. 100, together with other pertinent rules, orders and regulations promulgated by the PUC.[5]

Incorporation of General Order No. 100, section (8) into the provisions of the Transamerica policy added to the provisions the requirement of the general order that "such policy . . . will remain in full force and effect until canceled . . . ." This language, of course, is in direct conflict with the language in the policy as originally written stating that the policy was to expire in February 1981, a year after its purchase. Under *Samson* v. *Transamerica Ins. Co., supra,* 30 Cal.3d 220, 231, we must resolve this conflict in favor of the provisions of the regulatory scheme. Therefore, in this case incorporation into the policy of the PUC's General Order No. 100 language requiring the policy to remain in "full force and effect until canceled" converted the policy from a one-year term policy to a policy that was to remain in effect "until canceled."

To cancel a highway carrier insurance policy, section 3634 requires 30 days' written notice to the PUC. As previously mentioned, this identical notice requirement also appears in the PUC's General Order No. 100, which, as set forth above, makes the requirement of 30 days' written notice a part of the insurance policy in this case. It is undisputed here that there was no compliance with the notice requirements of section 3634 and General Order No. 100. Because of such noncompliance, the Transamerica policy was still in effect at the time of the 1989 accident, thus providing coverage for Tab.

Transamerica contends that noncompliance with the notice provisions pertaining to policy cancelation had no effect in this case. It argues that the policy issued to Tab had "expired" on February 1, 1981, at the end of the one-year policy term (well before the 1989 train accident involved here), thus relieving Transamerica of any obligation to notify the PUC that the policy had been "canceled." Transamerica states that policy *expiration* by lapse of a policy of insurance at the end of the policy term differs from policy *cancelation,* which occurs when an insurer terminates an ongoing policy, and that the 30 days' notice requirement comes into play only when a policy is *canceled.* This was the distinction drawn by the Court of Appeal, which, in holding in favor of Transamerica, quoted this language from *Farmers Ins. Exchange* v. *Vincent* (1967) 248 Cal.App.2d 534, 541 [56 Cal.Rptr. 775]: "In the ordinary sense of the terms, there is a difference between cancellation of a policy and its lapse by reason of the expiration of

[5]In requiring that the provisions of the standard form endorsement be made a part of every highway carrier liability policy, the PUC is acting in full accord with the Legislature's broad grant of regulatory authority. (§§ 3632, subd. (1), 3635.)

the term for which written. Cancellation implies a termination prior to the expiration of the term for which written." The general distinction between expiration and cancelation of an insurance policy is of no assistance to Transamerica in this case.

Here, because the Transamerica policy was *amended* by the PUC's standard form endorsement to remain "in full force and effect until canceled," it could never lapse by reason of expiration of the policy term; instead, as the result of the endorsement, the policy was to provide coverage "until canceled." Transamerica could have canceled its policy at any time simply by giving the requisite 30 days' notice to the PUC. Indeed, at oral argument, in response to questions by this court, counsel for Transamerica as well as counsel for amicus curiae, Continental Insurance, acknowledged that insurers routinely comply with the PUC's cancelation notice requirement, and that the failure to do so in this case was an isolated incident.

Transamerica draws our attention to the term "expiration" in General Order No. 100, section (9): "Upon cancellation, expiration or suspension of an insurance policy . . . the operative authority of any highway carrier . . . shall stand suspended immediately upon the effective date of such cancellation, expiration or suspension." Because this language refers to cancelation as well as expiration of a policy, Transamerica argues that the PUC itself acknowledges a distinction between cancelation and expiration. We are not persuaded. Section (9) of General Order No. 100 makes a highway carrier's operating authority dependent on its maintaining insurance coverage. It is in that context that the language quoted mentions "cancellation, expiration or suspension." These are simply the grounds for suspending "the operative authority of any highway carrier." Whereas section (9) deals with the *consequences* of the termination of insurance, section (8) of General Order No. 100 sets forth the *manner* in which the termination occurs. In section (8), the PUC makes it clear that the only way to terminate a highway carrier policy is "in the manner provided by Section (6)," that is, by giving 30 days' written notice of cancelation to the PUC.

IV

■ We now consider Transamerica's contention that an insurer's non-compliance with the cancelation notice requirements pertaining to a liability policy issued to a highway carrier should expose the insurer to liability under the policy only if the highway carrier is not otherwise protected by liability insurance. A similar argument was rejected in *Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154 [286 Cal.Rptr. 146].

At issue in *Fireman's Fund* was coverage under a Fireman's Fund policy for serious bodily injuries suffered by two women on May 29, 1985, when their car collided with a tractor-trailer rig that had crossed a freeway center divider. The rig's owner, a licensed highway carrier, had purchased the $1 million liability insurance policy from Fireman's Fund to provide coverage for two consecutive one-year terms. On August 27, 1984, shortly into the second policy period, Fireman's Fund filed a certificate of insurance with the PUC certifying that the policy would be in effect from its commencement date of July 1, 1984, until canceled. Although the highway carrier notified Fireman's Fund of replacing, effective November 1, 1984, the Fireman's Fund policy with a $1 million primary policy issued by Central National Insurance Company, no one ever notified the PUC of cancelation of the Fireman's Fund policy. The Court of Appeal noted that the PUC had no record of a certificate of insurance filed by Central National Insurance Company. The court pointed out, however, that the PUC did receive "notice of alternate or replacement insurance coverage for [the highway carrier] issued by the Insurance Company of the State of Pennsylvania." (*Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.*, *supra*, 234 Cal.App.3d at p. 1159.)

Because of Fireman's Fund's failure to cancel its policy by providing the PUC with 30 days' written notice of cancelation, the Court of Appeal held that the Fireman's Fund policy was still in effect at the time of the May 29, 1985, accident providing coverage for the rig's owner. (*Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.*, *supra*, 234 Cal.App.3d at p. 1162.)

The court reasoned that section 3634's requirement of notice to the PUC was mandatory, and that therefore "Fireman's failure to provide the PUC with notice of cancellation resulted in continued, uninterrupted coverage" under the Fireman's Fund policy even though the highway carrier had purchased replacement insurance. (*Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.*, *supra*, 234 Cal.App.3d at p. 1162.) As the court explained: "[O]ur reading of the statute and regulations compels the conclusion notice of cancellation is needed for effective regulation of highway carriers—whether to guarantee the public records contain accurate, reliable, and up-to-date information on the carrier's insurance or bond, or to enable the PUC to suspend operating permits for carriers that are uninsured." (*Id.* at p. 1165.)

We agree with the Court of Appeal in *Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.*, *supra*, 234 Cal.App.3d 1154, that the regulatory scheme governing highway carriers imposes the "notice of cancelation" requirement on an insurer irrespective of the insured's purchase of replacement insurance. An insurer that files with the PUC a "certificate of insurance" as proof that a

highway carrier has insurance, as was done here, remains liable on its policy until that policy is canceled by giving the requisite 30 days' written notice to the PUC. This interpretation of the statutory notice requirement is most consistent with the Act's regulatory scheme for highway carriers, as we shall explain.

The certificate of insurance that an insurance company files with the PUC serves as proof of a highway carrier's adequate protection against liability. In this case, a long-term PUC employee testified at trial that the PUC looks to the certificate as proof of a highway carrier's compliance with the financial responsibility obligations imposed by the statutory scheme: When a certificate for a policy of insurance is on file, the PUC assumes that the policy is still in effect, thus providing coverage for the highway carrier.

In addition to providing an efficient means for the PUC to administer the Act's financial responsibility requirements imposed on highway carriers, the certificate of insurance on file with the PUC serves as assurance that the public is protected in the event of an accident involving a particular highway carrier. These important considerations far outweigh the slight burden imposed by statute on an insurer of providing the PUC with 30 days' written notice of cancelation of a liability policy issued to a highway carrier.

V

Transamerica argues it is entitled to reimbursement by Tab for Transamerica's payment of damages arising out of the 1989 train accident. We agree. The same standard form endorsement that we have discussed in detail above also states that "the insured agrees to reimburse the Company for . . . any payment that the Company would not have been obligated to make under the provisions of the policy *except for* the agreement contained in this endorsement." (Italics added.)

As set forth earlier, among the obligations an insurer undertakes by providing liability insurance to a highway carrier is the regulatory requirement that the policy remain in effect until canceled by giving 30 days' written notice of cancelation to the PUC. Here, "except for" the obligation of continuous coverage arising under the standard form endorsement, the policy that Transamerica issued to Tab in 1980 would, by its own terms, have expired in 1981, and Transamerica would thus not have incurred liability for damages resulting from the 1989 accident involving Tab's truck. Accordingly, Transamerica's payment toward Tab's damages flowing from the 1989 collision is a payment that Transamerica, under the language of the PUC's standard form endorsement, "would not have been obligated to make

under the provisions of the policy except for the agreement contained in [the standard form] endorsement." Therefore, Transamerica is entitled to reimbursement from Tab for any payment made under the policy.

The PUC's regulatory requirement that insurance policies for highway carriers remain "in full force and effect" until canceled serves the paramount objective of the Act: to assure the public that commercial highway carriers can answer in damages when their use of California's public highways results in injury to members of the public. To prevent a highway carrier from reaping an undeserved windfall, the regulatory scheme allows the insurer to seek reimbursement from the highway carrier, which, under the regulatory scheme, bears the ultimate responsibility for maintaining adequate liability coverage. We recognize that an insurance company's right of reimbursement will be of little avail if the insured highway carrier is insolvent. In that situation, principles of fairness dictate that, as between an insurer that fails to comply with the Act's requirement of providing the PUC 30 days' written notice of a policy's cancelation and a member of the public injured by an inadequately insured highway carrier that becomes insolvent, the risk of loss should, in light of the public protection concerns underlying the regulatory scheme governing highway carriers, fall on the insurer.

### CONCLUSION

The judgment of the Court of Appeal is reversed with directions to affirm the trial court judgment.

Mosk, J., George, J., and Werdegar, J., concurred.

**ARABIAN, J., Dissenting.**—I fully concur in the views expressed in Justice Baxter's dissenting opinion that the majority's interpretation of the relevant statutes and regulations is at odds with the plain language of these provisions, is not necessary to advance the purposes of the Highway Carriers' Act, and is patently unfair to insurers whose only fault lies in failing to comply with an administrative technicality imposed for the convenience of the Public Utilities Commission. I write separately to highlight a substantial injustice that in my estimation seriously flaws the majority's rationale: although Transamerica Insurance Company is now entitled to reimbursement, that fact will likely be cold comfort considering it not only has received no premiums for eight years following expiration of its policy but may well find Tab Transportation, Inc., judgment-proof when it seeks to assert its rights under the standard form endorsement.

The majority cite as the "paramount objective" of the Highway Carriers' Act "to assure the public that commercial highway carriers can answer in

damages when their use of California's public highways results in injury to members of the public." (Maj. opn., *ante*, at p. 404.) As they relate to this purpose, the facts here are not in dispute: at the time of the accident in question, Tab Transportation was covered by a liability insurance policy in the amount required by section 3631 of the Public Utilities Code. In accordance with section 3633, proof of such coverage in the form of a certificate of insurance was on file with the Public Utilities Commission. The insurer, Home Indemnity Company, paid the policy limits as part of a global settlement of all claims. In other words, the protected "members of the public" have received the full measure contemplated by statutory and regulatory requirements as to insurance coverage and liability limits. The majority articulate no equitable reason further responsibility for any "shortfall" as to damages should not therefore lie exclusively with the underinsured policyholder.

Nevertheless, the majority hold that because of a clerical oversight Transamerica Insurance is obligated to contribute its policy limits and then collect from Tab Transportation. This reimbursement "consolation" plainly and unjustly ignores the reality that resort to expired insurance coverage will only be necessary if the insured cannot otherwise satisfy a judgment or settlement agreement, i.e., is insolvent. If for this reason an injured claimant cannot recover full damages, an indemnitee insurer obviously will fare no better. According to the majority, the risk of loss in this situation must fall on the insurer for policy reasons. (Maj. opn., *ante*, at p. 404.) However, the net effect of their holding is that an insurer that has long ceased to receive any benefit from an expired policy is forced to supplement a statutory scheme the Legislature has already deemed adequate to protect the public interest in question. Such a determination is plainly beyond the authority of the courts.

"It is the substance rather than mere form that often governs in the construction of statutes if strict adherence to form would result in an injustice." (*Bank of Alameda County* v. *McColgan* (1945) 69 Cal.App.2d 464, 474 [159 P.2d 31]; Civ. Code, § 3528.) I cannot subscribe to the majority's violation of this cardinal principle of law with its manifestly unjust consequences.

BAXTER, J.—I dissent. The majority recognizes that a "paramount objective of the Highway Carriers' Act" (Pub. Util. Code, § 3501 et seq.) is "to assure the public that commercial highway carriers can answer in damages when their use of the California's public highways results in injury to members of the public." (Maj. opn., *ante*, at p. 404.) The majority further

recognizes that "[t]he certificate of insurance that an insurance company files with the PUC serves as proof of a highway carrier's adequate protection against liability." (*Id.* at p. 403.)

A certificate of insurance, attesting that Tab Transportation, Inc. (Tab) had current, effective liability coverage for more than the minimum statutory limits, was on file with the Public Utilities Commission (PUC) at the time of the accident in December 1989 giving rise to the damage claims in this case. Nor was there ever any lapse in Tab's liability coverage during the preceding eight years, notwithstanding the failure of Transamerica Insurance Company (Transamerica) to furnish the PUC with a "cancelation notice" for a one-year liability policy it had issued to Tab in 1980, which had *expired*, by its own terms, in early 1981. In short, the protection of the public was never compromised; Tab was fully insured under a new, current liability policy at the time of the accident, and was otherwise in full compliance with the law. The majority has nonetheless ignored these realities, and ignored the settled distinction between the "cancelation" and "expiration" of insurance policies, as those terms have long been used and understood. As will be shown, in its rush to rubber-stamp an administratively convenient construction of the pertinent statutory and regulatory provisions urged upon us by the PUC as amicus curiae, in a case with unique facts, the majority has made bad law and fashioned a result unjust to the parties concerned.

I

The PUC is the administrative agency charged with the responsibility of regulating public utilities within the State of California, including highway common carriers. (See Cal. Const., art. XII, §§ 3, 6; Pub. Util. Code, §§ 211, 213, 216, 701, 1062.) Tab, a commercial trucking company, is a highway common carrier subject to regulation by the PUC under the Highway Carriers' Act. (Pub. Util. Code, §§ 3501, 3511.) The statutory scheme requires highway carriers such as Tab to maintain liability protection in certain specified minimum amounts (*id.*, § 3631), and to furnish proof of such coverage to the PUC (*id.*, § 3632), which is routinely accomplished through the filing of a "certificate of insurance" (*id.*, § 3633).

In 1980, in full compliance with the insurance requirements of the Highway Carriers' Act, Tab purchased from Transamerica a liability insurance policy for a one-year fixed policy period commencing on February 1, 1980. The policy, by its express terms, *expired* at the end of the stated policy period on February 1, 1981.

Before expiration of the Transamerica policy, and again, in full compliance with the minimum insurance requirements of the Highway Carriers'

Act, Tab chose to replace it with another liability policy issued by Federal Insurance Company, which new insurer in turn furnished proof of the substituted coverage by filing the requisite certificate of insurance with the PUC. In 1989, Tab purchased another one-million-dollar liability policy from Home Indemnity Company, to cover the period April 1, 1989, to April 1, 1990. As proof of that coverage, Home Indemnity Company in turn furnished proof of its liability policy issued to Tab by filing a certificate of insurance with the PUC.

In December 1989, over eight years after the Transamerica policy had expired, one of Tab's trucks collided with an Amtrak passenger train at a railroad crossing in Stockton, killing the truck's driver and two train crewmen and injuring several Amtrak passengers. Facing suit for claims of wrongful death, personal injuries and property damage, Tab demanded coverage under the Transamerica policy, seeking to add its policy limits to those of the other policies in effect at the time of the accident toward the funding of a settlement in which Tab admitted liability.

Transamerica refused to participate in the settlement, and instead sought a declaratory judgment that it was not liable for injury or damages arising out of the December 1989 accident because its one-year liability policy issued to Tab had expired by its own terms more than eight years earlier. Tab cross-complained, asserting entitlement to coverage under the policy on the ground that Transamerica had never furnished notice of "cancelation" of the policy to the PUC, and pointing out that the *certificate of insurance* Transamerica had filed with the PUC as proof of coverage stated the policy was "Effective 2-1-80 Until Canceled." The trial court granted Tab's motion for summary adjudication on this basis.

Transamerica appealed. The Court of Appeal reversed on the coverage issue, concluding the Transamerica policy had expired of its own terms on February 1, 1981, and that Transamerica therefore had no obligation to give 30 days' written notice to the PUC of "cancelation" of the policy. We granted Tab's petition for review challenging the Court of Appeal's holding as contrary to the PUC's regulatory scheme.

The majority agrees with Tab on the coverage issue and reverses the judgment of the Court of Appeal, but holds further that Tab must reimburse Transamerica for any payments made under the policy pursuant to the terms of the PUC endorsement TL 675-Series (hereafter the standard form endorsement), which, by operation of law, was appended to, and made part of, the policy in question. I cannot subscribe to that result. I agree with the

holding of the Court of Appeal on the coverage issue, and would affirm the judgment of that court. Since the Court of Appeal determined the issue of coverage in favor of Transamerica, it did not reach or address the further issue of Transamerica's right to reimbursement under the terms of the standard form endorsement. I would likewise refrain from reaching the reimbursement issue.

## II

To begin with, I find the following portion of the opinion of the Court of Appeal in this case, authored by Justice Robert W. Merrill, and concurred in by then-Presiding Justice Clinton White and Justice Ming W. Chin, correctly reasoned, and accordingly would incorporate it into my analysis as set forth below.*

Highway carriers such as Tab are subject to regulation pursuant to Public Utilities Code section 3631 et seq. Section 3631 provides that, in granting permits to highway carriers, the PUC "shall . . . require the highway carrier to procure, and continue in effect during the life of the permit, adequate protection, as provided in [s]ection 3632, against liability imposed by law upon the highway carrier for the payment of damages for personal bodily injuries . . . [and for] damage or destruction of property . . . ." The protection required by section 3631 must be evidenced by either "the deposit with the commission, covering each vehicle used or to be used under the permit applied for, [¶] (1) Of a policy of insurance, . . . [¶] (2) Of a bond of a surety company . . . or [¶] (3) Of such evidence of qualification of the carrier as a self-insurer as may be authorized by the commission." (Pub. Util. Code, § 3632.) A certificate of insurance issued by the insurance company issuing the policy may be filed, with the consent of the PUC, in lieu of the policy. (Pub. Util. Code, § 3633.) [At oral argument, counsel for the PUC, appearing as amicus curiae in this case, informed us that the filing of a "certificate of insurance," as opposed to the actual policy itself, is the rule rather than the exception.] Transamerica filed such a certificate for the policy issued to Tab. The section at issue here, Public Utilities Code section 3634, provides in part that: "The policy of insurance or surety bond shall not be cancelable on less than 30 days' written notice to the commission, except

---

*Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the reporter's parallel citations) are, unless otherwise indicated, used to denote insertions or additions. Footnotes in the Court of Appeal opinion that have been retained are sequentially numbered. (See *Arriaga* v. *County of Alameda* (1995) 9 Cal.4th 1055, 1059 [40 Cal.Rptr.2d 116, 892 P.2d 150]; *People* v. *May* (1988) 44 Cal.3d 309, 315 [243 Cal.Rptr. 369, 748 P.2d 307]; *Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

in the event of cessation of operations as a highway carrier as approved by the commission."

Tab contends that, because Transamerica gave no notice to the PUC, the policy continued to provide coverage.[1] Tab urges that *Fireman's Fund Ins. Co.* v. *Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154 [286 Cal.Rptr. 146] [(*Fireman's Fund*)] requires this result.[2] In *Fireman's Fund*, the insured secured coverage from Fireman's Fund for two policy periods, from July 1, 1983, through July 1, 1985. The insured [footnote omitted] cancelled the Fireman's Fund policy and replaced it with another policy, effective November 1, 1984. Fireman's Fund did not provide the PUC with written notice of cancellation. A dispute arose regarding coverage following an accident on May 29, 1985. The court found that because Fireman's Fund had failed to notify the PUC of the policy's cancellation, the policy provided coverage. (*Id.*, at p. 1166.)

*Fireman's Fund*[, *supra*, 234 Cal.App.3d 1154,] addressed a notably different situation than that presented here. First, though the accident giving rise to the coverage dispute occurred six months after the policy was terminated, it occurred within the original policy period. More importantly, the issue addressed in *Fireman's Fund* was whether the insurer was required to provide notice to the PUC of the policy's cancellation, not its expiration.

Public Utilities Code section 3634 states only that a policy is not *cancelable* without notice to the PUC. In construing a statute, we look first to the words of the statute itself. (*J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1020 [278 Cal.Rptr. 64, 804 P.2d 689].) The word "cancel" has a specific meaning in the insurance context. " '. . . [W]ith respect to insurance, the word "cancellation" means "the termination either by the insured or the insurer or by both of insurance in accordance with the terms of the cancellation clause of a policy." [Citation.]' " (*Ohran* v. *National Automobile Ins. Co.* (1947) 82 Cal.App.2d 636, 642-643 [187 P.2d 66], quoting *Otterbein* v. *Babor & Comeau Co.* (1936) 272 N.Y. 149 [5 N.E.2d 71, 107 A.L.R. 1510].) "In the ordinary sense of the terms, there is a difference between cancellation of a policy and its lapse by reason of the expiration of the term for which written. Cancellation implies a termination prior to the expiration

---

[1]Tab also urges that Transamerica is estopped from arguing that it was not required to give notice to the PUC because Transamerica's certificate of insurance filed with the PUC stated that the policy was effective "2-1-80 Until Canceled." A certificate of insurance, however, is not a contract of insurance. (See Cal. Insurance Law & Practice (1994) Liability Insurance in General, § 41.12[2], p. 41-31.)

[2]The trial court stated that it granted summary adjudication to Tab on this issue in reliance on *Fireman's Fund*[, *supra*, 234 Cal.App.3d 1154].

of the term for which written." (*Farmers Ins. Exchange* v. *Vincent* (1967) 248 Cal.App.2d 534, 541 [56 Cal.Rptr. 775].)

The Legislature certainly was aware of this usage in enacting the statute. " '[T]he Legislature enacted section 7 of the Highway Carriers' Act with full contemplation of the practice and use of cancellation clauses generally as between insurer and insured and that it intended therein to *limit this right of cancellation according to the strict terms of the statute* . . . .' [Citation.]" (*[Fireman's Fund]*, supra, 234 Cal.App.3d at pp. 1163-1164.) Had the Legislature intended to require notice to the PUC in situations where the policy was terminated by means other than cancellation, it could easily have done so. (See *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].)

In interpreting a similar provision requiring notice of policy cancellation, the Ninth Circuit [Court of Appeals] held that there was a difference between "non-renewal" and "expiration" of a policy, noting that those terms are technical and have precise meanings in the insurance context. In *Aetna Cas. and Sur. Co.* v. *Merritt* (9th Cir. 1992) 974 F.2d 1196, the court considered a policy endorsement which provided: "Pursuant to Section 11.54 of the Los Angeles Administrative Code, the policy to which this endorsement is attached shall not be subject to cancellation, reduction in coverage or non-renewal except after written notice to the City Attorney of the City of Los Angeles . . . ." (*Id.*, at p. 1198.) In that case, the policy at issue had expired, but the insureds argued that it continued in effect because the insurer had failed to give notice to the city of the policy's "non-renewal." The court noted that " 'non-renewal' is a technical term, meaning a notice by the insurer that it is unwilling to renew the policy. . . . The 1984 policy's termination was not a non-renewal, but an expiration. Absence of a notice from [the insurer] to this effect did not extend it indefinitely and without payment of premiums." (*Id.*, at p. 1199.)

Likewise here, Public Utilities Code section 3634 does not require notice when a policy expires at the end of its term. The statute provides only that notice must be provided if the policy is cancelled. The policy at issue here expired at the end of the policy period, approximately eight years prior to the accident giving rise to the coverage dispute. In these circumstances, the insurer is not required by section 3634 to give notice to the PUC. [Footnote omitted.] [End of quotation from Court of Appeal opinion.]

## III

In addition to the Court of Appeal's analysis, I offer the following observations which, I believe, further undermine the rationale of the majority's holding on the coverage issue.

The majority correctly observes that Public Utilities Code section 3635 authorizes the PUC to adopt rules and regulations necessary to enforce the insurance requirements for highway carriers. (Maj. opn., *ante*, at p. 398.) Pursuant to such authority, the PUC promulgated General Order No. 100, which sets forth various provisions that must be incorporated in every policy. One such provision states: "[Section] (6) A policy of insurance, or surety bond, evidencing such protection, *shall not be cancelable on less than thirty (30) days' written notice to the Public Utilities Commission*, such notice to commence to run from the date notice is actually received at the office of the Commission." (Italics added.) Another provides: "[Section] (8) *Every insurance policy*, surety bond or equivalent protection to the public shall contain a provision that such policy, surety bond or equivalent protection *will remain in full force and effect until canceled in the manner provided by Section (6) of this General Order*." (Italics added.)

Sections (6) and (8) of General Order No. 100 are incorporated into the PUC's standard form endorsement, which endorsement, by operation of law, becomes appended to, and incorporated as part of, every policy of insurance issued to a highway carrier. I do not dispute that the provisions of the standard form endorsement become part of the contract of insurance between the parties. (See *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 231 [178 Cal.Rptr. 343, 636 P.2d 32].)

However, both sections (6) and (8) of General Order No. 100, as incorporated into the standard form endorsement, speak only to *cancelation* of a policy on 30 days' notice to the PUC. Nowhere is *expiration* of policies mentioned in General Order No. 100, or in any other language found in the endorsement itself. How then, should this court interpret the plain and express language that is contained in the relevant regulatory provisions? I would interpret such language consistently with the statutory authority found in Public Utilities Code section 3634, which likewise clearly and expressly envisions a regulatory scheme requiring 30 days' notice to the PUC upon *cancelation*, not expiration, of a common carrier's liability insurance coverage.

The majority, although acknowledging that "[i]ncorporation of General Order No. 100, section (8) into the provisions of the Transamerica policy added to the provisions the requirement of the general order that 'such policy . . . will remain in full force and effect *until canceled* . . . .'" (italics added), nonetheless concludes that "[t]his language, of course, is in direct conflict with the language in the policy as originally written stating that the policy was to expire in February 1981, a year after its purchase." (Maj. opn., *ante*, at p. 400.)

Properly interpreted, there is no "direct conflict." The provisions of Public Utilities Code section 3634, the provisions of sections (6) and (8) of General Order No. 100, the language of the standard form endorsement which incorporates them, and the wording of the PUC's own standard form "certificate of insurance"—all plainly, and expressly, refer to and address only the situation where a policy of insurance is being *canceled*, requiring 30 days' notice to the PUC of such *cancelation*. Nothing more need or should be read into the otherwise clear language of these provisions.

Moreover, this straightforward construction of the plain wording of the provisions makes sense, for *cancelation* of a policy during its term is an event terminating coverage of which the PUC would not otherwise be aware unless afforded notice. The expiration date of a fixed-term policy, on the other hand, is known to all at the time of inception of the policy; the PUC has notice of when the policy will expire at the time proof of insurance is tendered to it. The PUC complains, however, that its standard form "certificate of insurance" contains no place in which to insert the *expiration date* of a policy. This hardly furnishes a sound reason for this court to resurrect a contract of insurance which expired by its own express terms eight years earlier. The standard form "certificate of insurance" was drafted by the PUC to serve its administrative convenience; it does not become part of the contract of insurance. If the form is inadequate, I respectfully suggest the PUC redraft the standardized form to reflect the expiration dates of policies. The public policy to be furthered here is uninterrupted liability insurance coverage, which is routinely achieved through renewal, or substitution of new, successive fixed-term policies. The PUC's suggestion that an *expired* fixed-term policy must be deemed to remain in effect until "notice of cancelation" is tendered to the agency, notwithstanding that a new, adequate policy of liability coverage has been substituted in its stead, is simply not necessary to further this public policy.

Should this court nonetheless conclude, as does the majority, that the Legislature and the PUC really meant "cancelation *or expiration*" when they used the term *"cancelation"* in Public Utilities Code section 3634, and General Order No. 100, respectively? Although such a construction might serve the administrative convenience of the PUC, once again, no public policy or rule of construction compels such an interpretation. To the contrary, another provision of General Order No. 100—section (9)—provides that: "Upon cancellation, *expiration* or suspension of an insurance policy . . . the operative authority of any highway carrier . . . shall stand suspended immediately upon the effective date of such cancellation, *expiration* or suspension." (Italics added.) Clearly, the drafters of the PUC regulations

at issue here knew how to refer to *expiration* of insurance policies when they intended to do so.

The majority brushes this fact aside, suggesting that the terms used in section (9) of General Order No. 100 ("cancellation, expiration or suspension") "are simply the grounds for suspending 'the operative authority of any highway carrier,' " and hence deal only with the "consequences" of the termination of insurance, not the "manner" in which the termination occurs. (Maj. opn., *ante*, at p. 401, italics omitted.) I fail to see the distinction. The majority's response begs the very question of regulatory interpretation we face in this case. Under the majority holding, there can be no *expiration* of a highway carrier's liability insurance policy without 30 days' advance notice of "*cancelation*" of such policy to the PUC. The terms have been rendered interchangeable under the majority's rationale.

More specifically, under the majority's holding, all fixed-term policies falling within the regulatory authority of the PUC are now "continuous" insurance policies, with the fixed-term provisions in the contracts of insurance themselves nullified where the insurer—through inadvertence, mistake, neglect, or any other reason—fails to give the PUC 30 days' notice of "cancelation" of the policy upon its expiration. In the guise of purportedly furthering the public policy behind the Highway Carriers' Act, the majority has effectively authorized the PUC to turn fundamental concepts of insurance law—where policies subject to PUC regulation are concerned—on their head. And, as this case demonstrates, under the majority's holding such can be the result even years after an insurer's administrative oversight in failing to tender the required notice, notwithstanding that a regulated carrier is otherwise fully insured, and in good faith compliance with the letter and spirit of the Highway Carriers' Act's insurance requirements. Neither sound public policy nor justice is served by such a result.

IV

As I have explained, under my analysis, and that of the opinion of the Court of Appeal below, the issue of "reimbursement" under the provisions of the PUC's standard form endorsement becomes moot.

I would note, however, that the majority's interpretation of, and reliance upon, the reimbursement provisions of the standard form PUC endorsement, given the unique facts of this case, have hardly achieved an equitable result. Transamerica, the party presumably responsible for transgressing the PUC's regulations by failing to give "notice of cancelation" of the expiration of its fixed-term policy furnished to Tab eight years earlier, is to be reimbursed by

Tab for any costs of indemnification under the policy. Tab, in turn, which complied with the law, maintained uninterrupted liability coverage with limits exceeding the statutory minimum requirements at the time of the accident, and continued to pay insurance premiums right along, is now to be straddled with the cost of funding that portion of its own settlement (as if it had been self-insured) to the extent Transamerica's policy limits have been found on the risk and Tab must reimburse Transamerica for any payouts under the policy.

I fail to see how the interests of the public, the parties to this litigation, the regulated common carrier industry, or the insurance industry, have been served by the disposition reached by the majority today. I would affirm the judgment of the Court of Appeal below, directing the trial court to enter judgment on the complaint and cross-complaint in favor of Transamerica and against Tab on the issue of coverage.

Lucas, C. J., and Arabian, J., concurred.

The petition of appellant Transamerica Insurance Company for a rehearing was denied February 22, 1996. Arabian, J., and Baxter, J., were of the opinion that the petition should be granted.